**The PEOPLE of the State of Colorado,**
**Plaintiff-Appellee,**

v.

**Larry David TURNER,**
**Defendant-Appellant.**

No. 82CA0667.

Colorado Court of Appeals,
Div. III.

Oct. 13, 1983.

Rehearing Denied Nov. 3, 1983.

Certiorari Denied May 21, 1984.

Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Richard H. Forman, Sp. Asst. Atty. Gen., Virginia Byrnes, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Joseph P. Jenkins, Estes Park, for defendant-appellant.

STERNBERG, Judge.

The defendant, Larry David Turner, appeals a judgment of conviction of aggravated robbery entered on a jury verdict of guilty. We reverse.

The prosecution's evidence established the robbery of a motel and defendant's identity as the robber. Defendant did not dispute that he committed the offense. He attempted to assert the affirmative defense of involuntary intoxication, § 18–1–804(3), C.R.S.1973 (1978 Repl.Vol. 8), contending that he had mistakenly consumed an overdose of a prescribed drug and lacked the capacity to conform his conduct to the requirements of the law.

The trial court denied defendant's request to question prospective jurors regarding drug intoxication and his motion for mistrial based on this denial. The court excluded evidence of drug ingestion except as it related to the voluntariness of defendant's confession and instructed the jury that the evidence was admitted for this limited purpose. The court also refused defendant's tendered instruction on involuntary intoxication. On appeal, defendant raises these rulings as reversible error.

A suppression hearing was held relative to defendant's statements to police and his contention that he was incompetent to waive his right to remain silent. The following evidence was elicited. A urinalysis shortly after defendant's apprehension showed that a barbiturate was present in his system. The victim testified that the defendant appeared "nervous and shaky" at the time of the offense, leading her to believe he was on drugs.

Defendant testified that in the 26 hours prior to the offense he had taken approximately 25 Fiorinal tablets, five at a time. The drug had been prescribed by a doctor approximately three years earlier for the relief of migraine headaches.

According to defendant the prescribed dosage was two tablets every four hours as needed. This dosage generally relieved or at least alleviated his headaches, and "perhaps [made him] slightly drowsy." He testified that he often exceeded the prescribed dosage and had previously taken as many as twelve tablets in 24 hours primarily be-

cause of the severity of his pain and sometimes to relieve depression.

At the time he took the last five of the 25 at issue here, he was feeling "fairly sleepy ... and a little bit disoriented," but he knew what he was taking. He had continued to take the medication throughout the day because it had not relieved his pain. He did not know what effect the 25 pills would have, but believed a heavy dose of Fiorinal would cause him to go to sleep. Defendant testified that he had never been warned about an overdose, and did not believe that he had been warned that Fiorinal could be habit-forming.

At the time of the offense defendant felt "foggy," lacked physical coordination, and his vision was abnormal. He stated that he did not know where he was or what he was doing during most of the evening.

At a hearing on the People's *in limine* motion prior to trial, defendant contended that the evidence elicited at the suppression hearing was sufficient to create a jury question as to whether such intoxication was or was not self-induced. He declined to make an offer of proof as to what other subpoenaed witnesses, including his doctor, would testify.

The trial court found that defendant's evidence established only that he had taken an overdose of a prescription drug, and that he knew or should have known that such overdose would cause him to be intoxicated. The court concluded that defendant's evidence showed only self-induced intoxication which is not a defense to aggravated robbery, a general intent crime, *see People v. DelGuidice*, 199 Colo. 41, 606 P.2d 840 (1979), and ruled that evidence of intoxication was, therefore, admissible only with respect to the voluntariness of defendant's statement to the police.

## I.

The dispositive issue on this appeal is whether the defendant presented sufficient evidence of involuntary intoxication at the suppression hearing for evidence thereof to be admitted at trial for the purpose of establishing the defense, and for the defense to go to the jury. In our view, the evidence, while meager, is sufficient to require that the case go to the jury.

■ While voluntary intoxication is incompetent to disprove general intent, involuntary intoxication is an affirmative defense which will serve as a complete defense to any crime having an intent element if such intoxication results in a defendant lacking the capacity to conform his conduct to the law. Sections 18–1–804 and 18–1–805, C.R.S.1973 (1978 Repl.Vol. 8); *Hendershott v. People*, 653 P.2d 385 (Colo. 1982).

■ Section 18–1–804(5), C.R.S.1973 (1978 Repl.Vol. 8) provides that intoxication is self-induced or voluntary if it is:

"caused by substances which the defendant *knows or ought to know have the tendency to cause intoxication* and which he knowingly introduced or allowed to be introduced into his body, unless they were introduced pursuant to medical advice or under circumstances that would afford a defense to a charge of crime." (emphasis supplied)

Once a defendant presents some credible evidence of an affirmative defense it becomes a jury question, and the burden of proof is on the prosecution to establish defendant's guilt as to that issue beyond a reasonable doubt. Section 18–1–407, C.R.S. 1973 (1978 Repl.Vol. 8); *Hendershott v. People, supra.*

Here, the defendant presented no evidence that the drugs were forced upon him or introduced through trickery, duress, or other circumstances which would afford a defense to a crime. Nor could he claim that the drugs were introduced pursuant to medical advice since he exceeded the prescribed dosage. However, he argues that by presenting evidence that he did not know and had not been warned of the intoxicating effect of the drug he raised the defense of involuntary intoxication, and the trial court's finding that he knew or should have known of the drug's effect was a usurpation of the jury's fact-finding function.

Because the affirmative defense of involuntary intoxication is relatively rare, the precise question has not been previously addressed by the Colorado courts. The general rule is:

"[W]here the intoxication is caused by an overdose of [a prescription] medicine ... the resulting intoxication ... has been considered voluntary or involuntary depending primarily upon whether the individual should have known that intoxication would ensue."

Annot., 73 A.L.R.3d 195. *See also People v. Murray*, 247 Cal.App.2d 730, 56 Cal. Rptr. 21 (1967); *City of Minneapolis v. Altimus*, 306 Minn. 462, 238 N.W.2d 851 (1976). The provision in § 18–1–804(5), that voluntary intoxication is "caused by substances defendant knows or ought to know have the tendency to cause intoxication" is a codification of this rule. *See Model Penal Code* § 2.08(5)(b), Comment (Tent.Draft No. 9, 1959).

The seminal case on the issue, *Perkins v. United States*, 228 F. 408 (4th Cir.1915) applied the rule where a defendant initially took the prescribed dose of a drug, but then took a dose greatly in excess of that prescribed, and subsequently killed a fellow steamer passenger.

"A patient is not presumed to know that a physician's prescription may produce a dangerous frenzy. But he is bound to take notice of the warning appearing on a prescription, and this obligation is, of course, stronger if he reads the prescription. If, for example, in this case, the prescription itself, or the realized effect of the first dose of the chloral, or both together, warned the defendant before he had lost control of himself that he might be thrown into an uncontrollable frenzy, then he would be guilty of murder or manslaughter according to the view the jury might take of the circumstances. If, on the other hand, the defendant had good reason to infer from the terms of the prescription or the oral instructions of the physician, or from the effect of the first dose, or from all these together, that he would fall into unconsciousness from a larger dose, then he would not be legally responsible for acts committed in a violent frenzy which he had no reason to anticipate."

■ Generally, a prescription will serve to place a patient on notice that an excessive dose will impair his faculties. *See Perkins v. United States, supra; cf. Hendershott v. People, supra.* Therefore, where no controverting evidence is presented, a trial court would be correct in finding that excessive use of a prescription drug constituted voluntary intoxication.

■ However, here the defendant testified that he had not been warned of the consequences of ingesting excessive doses of Fiorinal, and that his past experience in taking excessive doses caused him to believe not that he would become intoxicated, but that he would go to sleep. This evidence consisted of something more than an unsupported assertion, and could serve to establish the defense if believed by the jury. Therefore, it constitutes sufficient credible evidence to submit the defense to the jury. *See People v. Strock*, 42 Colo. App. 404, 600 P.2d 91 (1979). It then becomes the jury's function as fact-finder to determine the weight of the evidence in light of the credibility of the witnesses, common knowledge, and the implicit warning in the prescribed dosage. *See People v. Brassfield*, 652 P.2d 588 (Colo.1982). If the jury determines that any intoxication was involuntary, in order for the intoxication to serve as a defense to aggravated robbery, the jury must weigh the evidence and determine if, because of such intoxication, the defendant "lack[ed] capacity to conform his conduct to the requirements of the law." Section 18–1–804(3), C.R.S.1973 (1978 Repl.Vol. 8).

To deny defendant the chance to go to the jury on the issue of whether his intoxication was involuntary and thus constituted a defense to a general intent crime, is to give more weight to what might be assumed to be common knowledge of the effects of ingesting an excessive dose of a drug, than the specific evidence elicited on the subject.

■ The apparent basis of the court's ruling prohibiting defendant on *voir dire* from inquiring into potential jurors' attitudes toward prescription drugs was a belief that evidence of drug use would be incompetent at trial. Thus, this inquiry should be permitted on retrial. However, the trial court has broad discretion to limit *voir dire* questioning for purposes of efficiency and judicial economy, and defendant need only be given sufficient latitude to determine if potential jurors are biased or prejudiced on this or other issues. *See* Crim.P. 24; *People v. Saiz*, 660 P.2d 2 (Colo.App.1982).

## II.

Defendant's remaining contentions of error relate to the allegedly erroneous admission of rebuttal testimony.

Defendant testified that he had been a police officer and was terminated when he was falsely accused of taking drugs which the police had seized as evidence. On rebuttal, over defendant's objection, a police officer testified that defendant was terminated when he stole the drugs and suggested to the officer that they conspire to sell them. Following the officer's testimony defendant moved for a mistrial. The court denied defendant's motion, but instructed the jury that the evidence was to be considered only for the limited purpose of weighing the defendant's credibility.

Defendant contends that the court abused its discretion in allowing the rebuttal testimony regarding his termination and denying his mistrial motion. We do not agree.

■ Under the Colorado Rules of Evidence, evidence which tends to attack a witness' credibility solely by impugning his moral character is inadmissible, as is impeachment evidence on a collateral issue. Colorado Rules of Evidence 403, 608(b); *People v. Diaz*, 644 P.2d 71 (Colo.App. 1981).

■ However, in this case defendant raised the issue of the correctness of the charge leading to his discharge as a police officer. Thus, his credibility was an issue. The trial court did not err in admitting the testimony for the limited purpose of credibility, *see People v. Coca*, 39 Colo.App. 264, 564 P.2d 431 (1977), and even if there were error it was invited. *See People v. Shackelford*, 182 Colo. 48, 511 P.2d 19 (1973).

The judgment is reversed and the cause is remanded for a new trial conducted in accordance with the views expressed herein.

TURSI and BABCOCK, JJ., concur.