The **PEOPLE** of the State of Colorado, Plaintiff–Appellee,

v.

**Steve David GARCIA, Jr.,**
Defendant–Appellant.

No. 01CA2514.

Colorado Court of Appeals,
Div. IV.

Aug. 14, 2003.

Rehearing Denied Sept. 18, 2003.

Certiorari Granted April 5, 2004.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2002.

Ken Salazar, Attorney General, Patricia R. Van Horn, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Cynthia Camp, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge GRAHAM.

Defendant, Steve David Garcia, Jr., appeals the judgment of conviction entered upon a jury verdict finding him guilty of attempted second degree murder and first degree assault. We reverse and remand for a new trial.

On July 8, 1999, defendant's wife told him she wanted to end their marriage, and defendant moved out of the home. Their child's birthday was imminent, and the child invited defendant to her birthday party. Wife gave defendant a ride to the party, and, en route, the couple stopped for party supplies.

In anticipation of indulging in his daughter's birthday party sweets, defendant, a diabetic, had injected himself that morning with an abnormally large amount of insulin. Wife noticed that defendant was quiet, and she inquired whether he felt all right. Defendant responded that he was "fine."

As wife started to back out of a parking lot, defendant struck her on the head with a hammer. Injured, wife ran from the car, but defendant grabbed her and tried to push her back into the vehicle. She escaped and fled. A nearby shopkeeper told defendant to stop and leave the premises. Defendant drove away. Eventually, defendant caught up with his wife and ran over her.

Defendant was charged with first degree assault, domestic violence, attempted first degree murder, and two counts of mandatory sentence for violent crimes.

In pretrial proceedings, defendant sought to assert a defense of involuntary intoxication based upon his injection of insulin and a resulting condition of hypoglycemia, which occurred when defendant failed to eat. Defendant endorsed a proposed expert, an endocrinologist, to testify to the effects of hypoglycemia, to defendant's historic hypoglycemic condition, and to state his opinion that, in a state of hypoglycemia, defendant could not conform his conduct to the law.

The prosecutor moved to exclude the expert's testimony on the ground that it was a "temporary insanity defense." The court ruled that it was admissible only under a theory of impaired mental condition or insanity and that, in accordance with § 16–8–101.5, C.R.S.2002, defendant was required to plead the defense of insanity. Defendant then pleaded insanity. A jury instruction was given on the insanity defense, but no instruction was requested or given concerning involuntary intoxication.

Defendant was convicted and sentenced to twenty years in the Department of Corrections plus five years of mandatory parole.

### I.

Defendant contends that the trial court erred in precluding his involuntary intoxication defense and requiring him to plead to insanity. We agree.

■ A defense based upon mental defect or insanity must be affirmatively pleaded at arraignment, in part because it sets in motion a specific process by which the defendant is professionally evaluated. Section 16–8–103.5(1), (4), C.R.S.2002. However, there

may be evidence of diminished capacity caused by intoxication, not based upon a mental defect, which establishes that the defendant was not capable of conforming his conduct to the requirements of the law, thus absolving him of responsibility for the act because he lacked the mens rea element of the crime. *People v. Low,* 732 P.2d 622 (Colo.1987).

■ Impairment through intoxication is not necessarily a mental defect or disease. Section 18–1–804(2), C.R.S.2002. Careful distinctions are drawn between self-induced intoxication and involuntary intoxication. Where intoxication is self-induced, the incapacity is avoidable, and based on the moral blame associated with awareness that an ingested substance will likely alter one's faculties, that person is barred from avoiding the mens rea element of a crime. *Hendershott v. People,* 653 P.2d 385 (Colo.1982). Indeed, the statutory scheme adopted by the General Assembly specifically excludes the use of self-induced intoxication as a defense to general intent crimes, including second degree murder. Sections 18–1–804(1), 18–3–103, C.R.S.2002.

■ In contrast, no moral culpability attaches to involuntary intoxication. The affirmative defense of involuntary intoxication insulates a person from criminal responsibility where the involuntary intoxication eliminates his capacity to conform his conduct to the law. It requires no special pleading requirements, *People v. Low, supra,* and is an affirmative defense protected by the "presumption of innocence and the constitutional requirement of prosecutorial proof of guilt beyond a reasonable doubt." *Hendershott v. People, supra,* 653 P.2d at 391.

■ If there is any credible evidence to support the defense, the trial court must instruct the jury on the defense even if the supporting evidence consists of "highly improbable testimony by the defendant." *Lybarger v. People,* 807 P.2d 570, 579 (Colo.1991)(quoting *People v. Fuller,* 781 P.2d 647, 651 (Colo.1989)).

■ The issue of intoxication is for the jury. *People v. White,* 191 Colo. 353, 553 P.2d 68 (1976). Whether intoxication caused by an overdose of a prescription medicine is considered voluntary or involuntary depends upon whether the individual should have known that intoxication would ensue, which also is a question for the jury. *People v. Turner,* 680 P.2d 1290 (Colo.App.1983).

Here, defendant sought to introduce a well-regarded expert's testimony about the effects of diabetes and hypoglycemia in support of his defense of involuntary intoxication.

Prior to trial, defendant urged that expert testimony be allowed to show the effects of hypoglycemia on his ability to conform his conduct to the law. In their motion in limine, the People equated this testimony to a mental disease or defect or impaired mental condition. In response, defense counsel argued, "if the Court takes the position of the prosecution that this is really [an impaired mental condition or insanity defense], then anything that the defense ever raises to challenge the prosecution's element of mens rea becomes an insanity defense, and that cannot be." In a pretrial hearing, defense counsel argued "we don't agree that this evidence should fall under [the impaired mental condition] statute." Defense counsel also asserted a due process violation in having to assert a mental defect defense simply to present evidence of the effects of hypoglycemia on defendant's ability to conform his conduct. Nevertheless, the trial court required defendant to assert a mental defect defense pursuant to § 16–8–106, C.R.S.2002, or suffer the disallowance of his expert's testimony.

■ The People now suggest that by asserting the mental defect defense, in accordance with the court's order, and by not requesting an involuntary intoxication instruction, defendant waived and abandoned the affirmative defense of involuntary intoxication. In light of defense counsel's repeated pretrial requests to assert the defense without use of the mental defect statute, we deem this argument unavailing. Defense counsel merely complied with the court's order while preserving defendant's assertion of error.

■ Here, the facts tending to support a claim of involuntary intoxication are inconclusive. However, defendant was foreclosed

from the possibility of presenting an instruction based upon even slight evidence. The parties should be free to argue evidence to allow the trier of fact to determine whether defendant was suffering from a hypoglycemic condition, whether that condition impaired his ability to conform his conduct, and whether the circumstances show that this condition was voluntarily induced. *See People v. Turner, supra* (it is the jury's function as fact finder to determine the weight and credibility of the witnesses, common knowledge, and the implicit warning in the prescribed dosage). Therefore, the trial court erred in precluding this defense and in foreclosing defendant's ability to present this evidence.

The fact that defendant was able to present testimony from experts concerning hypoglycemia does not alter our analysis. The jury could view this evidence only in the context of a mental disease or defect rather than in the context of intoxication, which we view to be a temporary condition unrelated to mental disease. Hence, providing the jury with instructions based solely on insanity was "in derogation of the presumption of innocence" to which defendant was entitled. *See Hendershott v. People,* 653 P.2d at 391.

The trial court erred in forcing defendant to adopt an unnecessary defense and in foreclosing the defense of voluntary intoxication. On remand, defendant should be afforded an instruction on intoxication. *See Lybarger v. People, supra.*

## II.

■ We agree with defendant's contention that the trial court erred in ordering him to undergo a second psychiatric evaluation. While this issue may not arise on remand, we note that the trial court made no findings with respect to good cause for granting an additional examination.

■ A court may order a second examination only for good cause shown. Section 16–8–106(1). Although the standard is not an onerous one, there must be some basis, other than counsel's opinion, for showing that the first examination was inadequate or unfair. *See Massey v. Dist. Court,* 180 Colo. 359, 362, 506 P.2d 128, 129 (1973); *see also*

*People v. Palmer,* 31 P.3d 863 (Colo.2001)(the defendant's argument that psychiatrists applied incorrect legal standard lacked merit and, therefore, no good cause shown).

In May 2000, the court found that the proposed testimony of defendant's expert endocrinologist placed defendant's mental condition in issue. Based on this ruling, the court ordered defendant to be evaluated for impaired mental condition. In August 2000, the expert evaluated defendant and concluded that defendant was "so diseased in mind at the time of the commission of the act as to be incapable of distinguishing right from wrong with respect to the act." Further, the expert found that "within a reasonable medical certainty, that [defendant] had a condition of mind, caused by mental disease, which prevented him from forming a culpable mental state which is an essential element of the crime charged."

The prosecution filed a motion to compel further psychiatric examination of defendant. The prosecution did not agree with the expert's opinion and stated that an observation period was an important part of a sanity examination, and the expert did not observe defendant before the exam. The prosecution also asserted that it had consulted with other experts who were "skeptical of [the defense expert's] diagnosis," and that these experts needed to speak with defendant to do their own evaluation before opining whether the defense expert's opinion was based in fact. Defendant objected to a second exam.

The court ordered a second psychiatric examination, performed by another doctor. This doctor found that defendant was sane at the time of the crime.

The trial court observed, without findings, that § 16–8–106(1), C.R.S.2002, contemplated an additional evaluation, and the court granted the prosecution's request. The court did not articulate reasons to support a showing of good cause. Therefore, the trial court erred in ordering a second evaluation.

## III.

Defendant contends that the trial court erred in denying his request for a mistrial

based on prosecutorial misconduct. We need only generally address this issue.

Defendant argues that the prosecution failed to disclose certain statements of a witness and made improper references during closing argument to defendant's silence.

First, we note that Colorado Rule of Professional Conduct 3.8(d) requires prosecutors to disclose constitutionally material exculpatory evidence in advance of any critical stage in the proceedings. This disclosure would include impeachment evidence. *In re Attorney C*, 47 P.3d 1167 (Colo.2002).

Additionally, although we do not approve of the prosecutor's closing comments, in light of the trial court's admonition to him at the first trial, we anticipate that closing argument at retrial will not contain any references to defendant's lack of testimony in the event he chooses not to testify.

The judgment is reversed, and the case is remanded to the trial court for further proceedings in accordance with this opinion.

Chief Judge DAVIDSON and Judge NIETO concur.