The PEOPLE of the State of
Colorado, Petitioner,

v.

Steve David GARCIA, Jr., Respondent.

No. 03SC675.

Supreme Court of Colorado.

June 13, 2005.

John W. Suthers, Attorney General, Patricia R. Van Horn, Assistant Attorney General,

Appellate Division, Criminal Justice Section, Denver, for Petitioner.

David S. Kaplan, Colorado State Public Defender, Cynthia Camp, Deputy State Public Defender, Denver, for Respondent.

BENDER, Justice.

## I.  INTRODUCTION

We review the court of appeals' decision in *People v. Garcia*, 87 P.3d 159 (Colo.App. 2003), which reversed Steve David Garcia, Jr.'s convictions for the attempted second degree murder and first degree assault of his wife.

Garcia, an insulin-dependent diabetic, asserted before trial that he had suffered from hypoglycemia, or low blood sugar level, at the time of the crimes and that he intended to raise involuntary intoxication as an affirmative defense. Hypoglycemia is a medical condition resulting from a diabetic's ingestion, or injection, of insulin coupled with a failure to eat appropriately. The trial court ruled, as a matter of law, that evidence of Garcia's hypoglycemic condition could not be presented under the affirmative defense of involuntary intoxication but, rather, could be presented only if Garcia entered a plea of not guilty by reason of insanity. As a result, Garcia entered a plea of not guilty by reason of insanity, abandoning his defense of involuntary intoxication. Pursuant to statute, the court then ordered a mental health examination on the issue of Garcia's sanity.

As a matter of law, we hold that the medical condition of insulin-induced hypoglycemia may, depending upon the particular facts and circumstances, constitute the affirmative defense of involuntary intoxication. We also hold that insanity and involuntary intoxication are legally separate and distinct defenses. Because the trial court ruled that insulin-induced hypoglycemia cannot constitute involuntary 'intoxication as a matter of law, it committed error. As a result of this improper ruling, the trial court deprived Garcia of the opportunity to meet his burden of going forward with evidence to raise his claimed affirmative defense of involuntary intoxication. Because Garcia was not given the opportunity to introduce evidence to raise

this defense, we view the record before us as being limited on this issue. We therefore remand to the trial court to permit both parties to supplement, through offers of proof or evidence, the trial record on the issue of Garcia's claimed involuntary intoxication defense.

In view of all of the evidence and proffers, the trial court shall determine whether Garcia is entitled to raise the defense of involuntary intoxication for jury consideration. If he is so entitled, the trial court shall conduct a new trial. If the trial court concludes that Garcia has not met his burden of going forward with evidence to raise this defense, then Garcia's convictions shall be affirmed. Hence, we affirm in part, reverse in part, and remand this case to the court of appeals with directions to return it to the trial court to permit both parties the opportunity to supplement the record.

## II.  FACTS AND PROCEEDINGS BELOW

Garcia was charged with attempted first degree murder, first degree assault, domestic violence, and two counts of mandatory sentence for violent crimes for allegedly having hit his wife, Johnie Garcia, on the head with a hammer and then having run over her with a van.

Before trial, Garcia's counsel informed the court that Garcia would be asserting the affirmative defense of involuntary intoxication because he had suffered from hypoglycemia at the time of the alleged crimes. Hypoglycemia occurs when a diabetic injects, or ingests, insulin and then fails to eat properly. As part of this defense, Garcia's counsel proposed to call an endocrinologist, Dr. Daniel Bessesen, to testify that Garcia's injection of insulin on the morning of the alleged crimes, coupled with a lack of food, resulted in his hypoglycemic condition. Defense counsel stated that Dr. Bessesen would testify, based on Garcia's medical records, that Garcia suffers from diabetes, that he takes insulin for the condition, and that he has had prior occasions of hypoglycemia. According to counsel, Dr. Bessesen would not be able to testify as to whether Garcia was

hypoglycemic at the time of the crimes. However, counsel stated that Dr. Bessesen would testify as to how hypoglycemia, in general, can affect a person, and coupled with evidence from other sources which would be presented at trial, counsel would be able to establish that Garcia was hypoglycemic at the time of the crimes: "Basically I will have to draw a link between the testimony of Dr. Bessesen and the testimony of the other evidence and other witnesses that I anticipate I will be bringing in about the events of that day."[1] From defense counsel's description of Dr. Bessesen's proposed testimony, the trial court concluded that Dr. Bessesen would have testified that Garcia's hypoglycemia affected his "rational thought processes to a degree [so as to] ... affect the mens rea of the Defendant or his ability to form a specific culpable mental state." The prosecution requested that the trial court exclude Dr. Bessesen's testimony, arguing the proposed testimony was tantamount to a "temporary insanity" defense and thus not permitted under Colorado law.

The trial court ruled that, as a matter of law, insulin-induced hypoglycemia could not constitute the affirmative defense of involuntary intoxication, under any circumstance, as that defense is defined by section 18–1–804(3), C.R.S. (2004). The court also ruled that evidence pertaining to Garcia's hypoglycemia could be presented only if Garcia entered a plea of not guilty by reason of insanity: "[T]his would be an affirmative defense of impaired mental condition [or insanity] as set forth under [section] 16–8–102."[2]

Defense counsel objected, arguing that Garcia was not insane and thus could not enter such a plea: "[Hypoglycemia is] not a mental disease or defect.... I never discussed with Mr. Garcia insanity ... I never discussed with him that that was a potential plea.... It doesn't fit at all in this.... [I]f the Court takes the position ... that this is really an IMC/insanity defense, then anything that the defense ever raises to challenge the prosecution's element of mens rea becomes an insanity defense, and that cannot be."

The trial court rejected defense counsel's objection and advised Garcia that if he entered a plea of not guilty by reason of insanity, the court would order him to be psychiatrically evaluated pursuant to section 16–8–105.5(1), C.R.S. (2004).

Before Garcia entered a plea of not guilty by reason of insanity, his counsel renewed his objection to the trial court's ruling and expressly noted that the court had made the admission of evidence of Garcia's hypoglycemia conditional upon the entry of such a plea: "[W]e don't agree that this is IMC [impaired mental condition], it's not within the definition of the statute. But the evidence that we want to bring in does challenge the mens rea and my client's ability to deliberate in this alleged crime." Following Garcia's entry of his plea of not guilty by reason of insanity, the trial court ordered him to undergo a mental health examination.

The court-appointed examiner, Dr. Robert Miller, concluded that Garcia had suffered an amnestic disorder due to insulin-induced hypoglycemia at the time of the crimes and that this disorder had caused him to be legally insane. At the request of the prosecution, the court ordered a second mental health evaluation by a second independent court-appointed examiner, Dr. Karen Fukutaki. Contrary to the findings of Dr. Miller, Dr. Fukutaki concluded that Garcia was legally sane at the time of the crimes.

Evidence at trial revealed that three days before the alleged crimes, Garcia's wife, Johnie Garcia, told him that she wanted a di-

---

1. While defense counsel claimed that Garcia was involuntarily intoxicated at the time of the crimes, his offer of proof focused primarily on establishing that Garcia was hypoglycemic when he committed the crimes. Defense counsel did not make a complete proffer of proposed evidence necessary to establish the affirmative defense of involuntary intoxication.

2. Because, in 1995, the General Assembly incorporated the defense of "impaired mental condition" into the defense of "insanity," we note at the outset that the trial court mischaracterized this defense as "impaired mental condition." See § 16–8–101.3, C.R.S. (2004). Despite this misclassification, however, the parties and the court-appointed psychiatric evaluators treated, and referred to, the plea as one of insanity, and we shall therefore refer to it as such.

vorce, and Garcia moved out of their home. On the morning of July 11, 1999, in anticipation of eating cake and ice cream at his teenage daughter's afternoon birthday party, Garcia, who was a diagnosed diabetic and had been treated for diabetes for five years, injected himself with a large dosage of insulin. Garcia did not eat anything following this insulin injection. While he and Johnie were running errands in Johnie's van before the party, Johnie noticed that Garcia was "real quiet" with an "along-for-the-ride type attitude." She asked him at least three times during this timeframe: "Are you okay? Do you need something to eat?" He responded, "No, I'm fine, okay."

When they were exiting a store parking lot in the van at approximately 11:30 a.m., Garcia hit Johnie, who was driving the van at the time, on the right side of her head with what Johnie later learned was a hammer. Garcia did not say anything when he hit her. Johnie immediately got out of the van and began running. Garcia met her at the back of the van and tried to shove her into it through the back door. When an owner of a nearby shop came out and talked to Garcia, Johnie retrieved her purse from the van and ran away. As she was running through parking lots along the main road, Johnie saw Garcia drive past her and turn into a driveway in front of her. After she turned and ran in the opposite direction, Johnie looked to see where Garcia had driven to and discovered that he was directly behind her in the van. Before she could get away, Garcia ran over her with the van and then drove away. Johnie sustained a depressed skull fracture and abrasions and bruises to her entire body.

At trial, Garcia did not dispute that he committed these acts against Johnie. However, he argued that, as a result of his hypoglycemia at the time of the incident, he had no recollection of what had happened and was not legally responsible for his acts because he was insane at the time the acts were committed. Both the prosecution and the defense focused their cases on the issue of whether Garcia was hypoglycemic at the time of the crimes and, if so, whether his hypoglycemia made him insane.

Garcia did not testify at trial. However, a substantial amount of evidence was presented regarding his alleged hypoglycemic condition on the day of the incident and his previous episodes of hypoglycemia. Johnie described three previous episodes in which Garcia had suffered from hypoglycemia. She stated that doctors had instructed him on the importance of eating following an insulin injection. Dr. Bessesen testified about hypoglycemia in general, and both court-appointed psychiatric experts testified regarding the condition generally and in reference to Garcia specifically. Direct and cross-examination of the two court-appointed doctors focused on whether Garcia was hypoglycemic on the day of the crimes and, if so, whether his hypoglycemia made him insane. For example, defense counsel asked Dr. Fukutaki: "If Mr. Garcia was experiencing hypoglycemia on July 11th, 1999, and if that's why he became unpredictably violent, would he have been insane?" No testimony addressed whether Garcia was involuntarily intoxicated as a result of his hypoglycemic condition.

The trial court instructed the jury on the defense of insanity. No instruction was requested or given on involuntary intoxication as an affirmative defense. The jury convicted Garcia of attempted second degree murder and first degree assault.

On appeal, the court of appeals concluded that impairment as a result of intoxication is "not necessarily a mental defect or disease," as defined by the defense of insanity, *Garcia*, 87 P.3d at 162, and held that the trial court erred by not permitting Garcia to proceed under his claimed affirmative defense of involuntary intoxication. *Id.* at 162–63. The court of appeals also held that the trial court erred by ordering a second mental health examination of Garcia without making any findings of good cause, pursuant to the statutes concerning insanity, for that evaluation. *Id.* at 163. Accordingly, the court of appeals reversed Garcia's convictions and remanded for a new trial. *Id.* at 164.

We granted the People's petition for certiorari to review the judgment of the court of appeals on these issues and now affirm in

part, reverse in part, and remand for further proceedings.[3]

## III. ANALYSIS

Although Garcia did not dispute that he committed the alleged acts against Johnie, he argued that he was not criminally responsible for his actions because he was suffering from hypoglycemia at the time of the crimes. While the central issue at trial concerned whether Garcia's alleged hypoglycemic condition excused his conduct, the jury was only permitted to consider such evidence in the context of Garcia's plea of not guilty by reason of insanity, and not in the context of the statutory affirmative defense of involuntary intoxication.

### A. As a Matter of Law, the Medical Condition of Insulin–Induced Hypoglycemia May, Depending Upon the Particular Facts and Circumstances, Constitute the Affirmative Defense of Involuntary Intoxication

To determine whether Garcia's claimed defense of involuntary intoxication was properly rejected, we begin by deciding whether, as a matter of law, the medical condition of insulin-induced hypoglycemia could constitute the affirmative defense of involuntary intoxication as defined by section 18–1–804(3).

■ Because statutory interpretation is a question of law, we conduct a de novo standard of review. In construing the statute so as to effectuate the legislative intent, we give words and phrases their commonly accepted and understood meanings. *People v. Martinez*, 70 P.3d 474, 477 (Colo.2003).

■ Intoxication is defined as "a disturbance of mental or physical capacities result-

ing from the introduction of any substance into the body" and is either voluntary or involuntary. § 18–1–804(4), C.R.S. (2004); *People v. Low*, 732 P.2d 622, 627 (Colo.1987). Voluntary, or self-induced, intoxication is caused by "substances which the defendant knows or ought to know have the tendency to cause intoxication and which he knowingly introduced or allowed to be introduced into his body, unless they were introduced pursuant to medical advice or under circumstances that would afford a defense to a charge of crime." § 18–1–804(5), C.R.S. (2004). Because involuntary intoxication, by definition, is intoxication which is "not self-induced," § 18–1–804(3), a person is involuntarily intoxicated when he or she takes a substance pursuant to medical advice, does not know that he or she is ingesting an intoxicant, or ingests a substance which is not known to be an intoxicating substance. *Low*, 732 P.2d at 627; *see* § 18–1–804(5). Whether a defendant was intoxicated at the time of a particular incident, and whether such intoxication was voluntary or involuntary, are questions for the factfinder and thus depend upon the particular facts of each case. *Low*, 732 P.2d at 627.

■ The General Assembly has expressly provided that involuntary intoxication is an affirmative defense to a crime charged: "A person is *not criminally responsible* for his conduct if, by reason of intoxication that is *not self-induced* at the time he acts, he lacks capacity to conform his conduct to the requirements of the law." § 18–1–804(3) (emphasis added). Because involuntary intoxication is statutorily defined as a complete defense to all crimes, an involuntarily intoxicated defendant is absolved of responsibility for all criminal acts.[4] Involuntary intoxication is akin to "temporary insanity" be-

3. We granted certiorari on the following issues:

(1) Whether hypoglycemia constitutes intoxication under § 18–1–804, C.R.S. (2004), for purposes of raising an intoxication defense. (2) Whether the trial court required respondent to present a defense of insanity and precluded him from presenting a defense of intoxication by making a pretrial evidentiary ruling that expert testimony on diabetes and hypoglycemia was admissible under an insanity defense.

(3) Whether the court of appeals erred in reversing the trial court's finding of good cause for a second psychiatric evaluation because the trial court did not make specific findings in its ruling.

4. Voluntary intoxication, on the other hand, is not an affirmative defense. Instead, voluntary intoxication is a defense only to a specific intent crime, and, thus, evidence of voluntary intoxication may not be set forth as a defense to a general intent crime. *Low*, 732 P.2d at 628.

cause "there is no immoral or blameworthy stigma attached to the condition." *Low,* 732 P.2d at 627.

This Court has not previously addressed whether the medical condition of insulin-induced hypoglycemia may constitute involuntary intoxication as that affirmative defense is statutorily defined. However, we determined in *People v. Low* that the defendant could assert involuntary intoxication as a complete defense to the crimes charged where he was allegedly unable to conform his conduct to the requirements of law as a result of ingesting a large quantity of over-the-counter cough drops. 732 P.2d at 626, 628. Low claimed both that the manufacturer's warning did not advise him that intoxication was a potential side effect of consuming large quantities of the cough drops and that his own previous experience with taking the medicine did not forewarn him of that possibility either. Based on these claims and expert testimony that excessive quantities of the cough drops could have prevented Low from lawfully conforming his conduct, this Court determined that Low's ingestion of the medicine could have made him involuntarily intoxicated for purposes of raising the affirmative defense defined by section 18–1–804(3).[5] *Id.*

Similarly, in *People v. Turner,* 680 P.2d 1290, 1292 (Colo.App.1983), *cert. denied* (May 21, 1984), the defendant claimed he had become involuntarily intoxicated as a result of overdosing on a prescription drug. Turner claimed that his resulting intoxication was involuntary because he had not been warned of the intoxicating side effect of an overdose of the drug and because his past experiences with the drug had led him to believe that an overdose would cause him to become fatigued, not intoxicated. *Id.* at 1292–93. The court of appeals concluded that based upon the defendant's evidence that he did not know of the potential intoxicating effect of an overdose of the drug, the defendant's overdose could constitute the affirmative defense of involuntary intoxication under section 18–1–804(3). The court ruled that the trial court erred by not permitting the defendant to present this affirmative defense for jury consideration. *Id.* at 1293.[6]

■ Here, it is not disputed that Garcia took insulin—a substance—pursuant to prescription on the morning of the alleged crimes and that he failed to eat following this insulin injection. At Garcia's trial, three doctors testified as experts concerning the medical condition of hypoglycemia generally and Garcia's condition at the time of the crimes. According to their testimony, diabetes is a medical condition in which blood sugar, or glucose, is not regulated normally by the body. Normally, insulin is naturally produced by the body as a hormone which regulates a person's blood sugar level. A diabetic, however, must inject, or ingest, insulin to control his or her blood sugar level. A diabetic's treating physician will prescribe the dosage of insulin necessary for that particular person's condition. When a diabetic takes insulin and fails to eat, a low blood sugar level, or hypoglycemia, can result. Hypoglycemia, in turn, can affect one's physical capacities, causing a loss of motor skills, and can also create an "altered mental state," affecting "decision-making abilities" and "prevent[ing] rational thinking, planning, deliberation and even appreciation of what [one is] doing." Given that hypoglycemia is typically cured by the ingestion of sugar, these physical and mental effects are typically temporary in nature. Because a person with an inability to think rationally could necessarily lack the capacity to conform his or her con-

---

5. Whether the defendant in *Low* was in fact involuntarily intoxicated was a question for the trial court which was sitting as the finder of fact. 732 P.2d at 628.

6. Similarly, many other jurisdictions have concluded that a defendant may raise involuntary intoxication as a defense where such condition is caused by the use of a prescription drug. *See People v. Hari,* 355 Ill.App.3d 449, 291 Ill.Dec. 14, 822 N.E.2d 889 (2005); *Commonwealth v. Darch,* 54 Mass.App.Ct. 713, 767 N.E.2d 1096 (2002); *State v. Gardner,* 230 Wis.2d 32, 601 N.W.2d 670 (Ct.App.1999); *Brancaccio v. State,* 698 So.2d 597 (Fla.Dist.Ct.App.1997); *Boswell v. State,* 610 So.2d 670 (Fla.Dist.Ct.App.1992); *People v. Caulley,* 197 Mich.App. 177, 494 N.W.2d 853, 859 (1992); *Shurbet v. State,* 652 S.W.2d 425, 428 (Tex.App.1982); *City of Minneapolis v. Altimus,* 306 Minn. 462, 238 N.W.2d 851 (1976); *State v. Gilcrist,* 15 Wash.App. 892, 552 P.2d 690 (1976).

duct to the requirements of law, and given that insulin is a substance taken pursuant to prescription, *i.e.*, pursuant to medical advice, we conclude that the medical condition of insulin-induced hypoglycemia could constitute involuntary intoxication for the affirmative defense defined by section 18–1–804(3).[7]

Our research has disclosed that other jurisdictions have concluded that insulin-induced hypoglycemia can constitute the affirmative defense of involuntary intoxication. *See, e.g., Mendenhall v. State,* 15 S.W.3d 560 (Tex.App.2000) (allowing affirmative defense of involuntary intoxication by insulin-induced hypoglycemia); *State v. Guilliot,* 106 Wash. App. 355, 22 P.3d 1266, 1272 (2001) ("defense based on hypoglycemia is similar to a voluntary or involuntary intoxication defense"). Similarly, while the New York appellate division did not reach the question of whether hypoglycemia could constitute involuntary intoxication, it did hold that insulin-induced hypoglycemia could constitute intoxication in general. *People v. Morton,* 100 A.D.2d 637, 638, 473 N.Y.S.2d 66 (N.Y.App.Div.1984) ("Drugs have been recognized as a cause of ... intoxication ... and there is no logical reason why insulin should be treated differently, especially in light of the expert testimony that hypoglycemia, also known as insulin reaction, could produce an intoxicated state.").

The People argue that insulin-induced hypoglycemia cannot constitute involuntary intoxication as a matter of law because Garcia's alleged hypoglycemic condition resulted not solely from the introduction of a substance into his body but, instead, from the combined injection of insulin with his failure to eat. We disagree. Applying Colorado's statutory language, intoxication is a substance-induced disturbance of mental or physical capacities. *See* § 18–1–804(4). Insulin is a substance prescribed for diabetics by doctors, and insulin-induced hypoglycemia is thus a drug-induced disturbance of one's mental and/or physical capacities. Although the effect of insulin on one's mental and physical capacities may be impacted by a failure to eat, we

agree with the conclusions reached by the other jurisdictions that insulin is a drug which can cause an intoxicated state.

We therefore conclude that, as a matter of law, the medical condition of insulin-induced hypoglycemia may, depending upon the particular facts and circumstances involved, constitute the affirmative defense of involuntary intoxication as that defense is defined by section 18–1–804(3).

**B. The Affirmative Defense of Involuntary Intoxication is Not the Same as a Plea of Not Guilty by Reason of Insanity**

■ The trial court ruled that evidence of Garcia's hypoglycemia was inadmissible to prove involuntary intoxication but could be presented if he entered a plea of not guilty by reason of insanity. Involuntary intoxication and insanity are legally separate and distinct defenses with significantly distinct legal consequences.

Under our insanity statute, a person is legally insane if he or she suffers from a "mental disease or defect" such that he or she is "so diseased or defective in mind at the time of the commission of the act as to be incapable of distinguishing right from wrong with respect to that act." § 16–8–101.5(1)(a), C.R.S. (2004). "Mental disease or defect" is defined as, "those severely abnormal mental conditions that grossly and demonstrably impair a person's perception or understanding of reality ...." § 16–8–102(4.7), C.R.S. (2004). Colorado law does not recognize "temporary insanity," *Low,* 732 P.2d at 631, and thus the "mental disease or defect" of insanity cannot be temporary in nature.

In contrast to insanity, involuntary intoxication is not a "mental disease or defect" within the meaning of insanity. The General Assembly has expressly stated that "*[i]ntoxication does not, in itself, constitute mental disease or defect* within the meaning of [the statutory section concerning insanity]." § 18–1–804(2), C.R.S. (2004) (emphasis added). The General Assembly has defined intoxication as a "disturbance" of capacities, and it

---

7. Our conclusion is directed only to whether hypoglycemia could constitute involuntary intoxication as a matter of law. Whether Garcia was

in fact involuntarily intoxicated at the time of these crimes is a question for the jury to decide. *See Low,* 732 P.2d at 627.

is therefore "temporary" by statutory definition. *See Webster's New World College Dictionary* 399 (3rd ed.1996) (defining "disturbance" as "any departure from normal" and defining "disturb" as "to break in on; interrupt"). As noted, we have expressly stated that involuntary intoxication is similar to "temporary insanity." *Low*, 732 P.2d at 627.

While both involuntary intoxication and insanity are statutorily-defined affirmative defenses, *see* §§ 18–1–804(3) & 18–1–805, C.R.S. (2004), the proof that a defendant must offer to support each of these defenses is strikingly different. To submit the affirmative defense of involuntary intoxication to the jury, a defendant must offer proof which constitutes "some credible evidence" of the condition. *See* § 18–1–407, C.R.S. (2004); *People v. Saavedra–Rodriguez*, 971 P.2d 223, 228 (Colo.1998). Thus, the defendant must offer some credible evidence showing: (1) the introduction of a substance into the body; (2) which was not known to be an intoxicant, or which the defendant did not know could act as an intoxicant, or which was taken pursuant to medical advice; (3) caused a disturbance of mental or physical capacities; and (4) resulted in the defendant's lack of capacity to conform his or her conduct to the requirements of law. *See* § 18–1–804. No special pleading requirements exist for the affirmative defense of involuntary intoxication. *Low*, 732 P.2d at 628. Due to the temporary nature of intoxication, no psychiatric examination of the defendant is statutorily mandated. *See* § 18–1–804.

Unlike the affirmative defense of involuntary intoxication, the defense of insanity may be raised only by entering a specific plea of "[n]ot guilty by reason of insanity" at the time of arraignment.[8] § 16–8–103(1)(a), C.R.S. (2004). The entry and acceptance of such a plea automatically triggers a court-ordered mental health examination of the defendant pursuant to section 16–8–105.5.

The four elements necessary for involuntary intoxication differ completely from the factual elements establishing insanity. To establish insanity, it must be demonstrated that: (1) the defendant is so diseased or defective in mind at the time of the act; (2) as a result of a severely abnormal mental condition; (3) which condition grossly and demonstrably impairs the defendant's perception or understanding of reality; (4) that he or she is incapable of distinguishing right from wrong with respect to the act committed. *See* § 16–8–101.5(1)(a); § 16–8–102(4.7).

While, in theory, both an "involuntarily intoxicated" person and a "legally insane" person are "absolved of responsibility for all crimes," *Low*, 732 P.2d at 629–30, the consequence to an accused who successfully asserts involuntary intoxication is dramatically different from that faced by an accused found to be legally insane. A defendant found not guilty by reason of insanity is committed to the custody of the Department of Human Services until determined eligible for release. § 16–8–105(4), C.R.S. (2004). An accused who successfully asserts the defense of involuntary intoxication is "held morally blameless" and is at once returned to society as a free person. *See Low*, 732 P.2d at 627–28.

Hence, we hold that involuntary intoxication and insanity are legally separate and distinct defenses.[9]

## IV. APPLICATION

Applying the principles discussed to the trial court's pretrial ruling, we conclude that the trial court erred in determining that the medical condition of insulin-induced hypoglycemia could not constitute the affirmative defense of involuntary intoxication as that defense is defined by section 18–1–804(3).

As noted, to present an affirmative defense for jury consideration, the defendant

8. However, for good cause shown, a trial court may permit the entry of a plea of not guilty by reason of insanity at any time prior to trial. § 16–8–103(1)(a).

9. *See* W. LaFave & A. Scott, Jr., *Criminal Law* § 410(g), at 395 (2d ed. 1986) ("The defense of intoxication is quite different from the defense of insanity ...."); *Hendershott v. People*, 653 P.2d 385, 397 n. 11 (Colo.1982) (recognizing separate nature of evidence of "mental disease or defect" and evidence of "involuntary intoxication").

must present "some credible evidence" on the issue involving the claimed defense. § 18–1–407; *Saavedra–Rodriguez*, 971 P.2d at 228. Whether the defendant meets this burden of going forward is a question of law for the trial court, and we therefore review the sufficiency of the defendant's evidence de novo. *People v. Hill,* 934 P.2d 821, 826 (Colo.1997).

While the defendant bears the burden of going forward, Colorado law dictates that once that burden has been met, the prosecution has the burden of disproving the claimed affirmative defense beyond a reasonable doubt. § 18–1–407(2), C.R.S. (2004);[10] *Hill,* 934 P.2d at 826; *Lybarger v. People,* 807 P.2d 570, 579 (Colo.1991). The prosecution bears this burden because a defendant's constitutional right to due process requires that the state prove beyond a reasonable doubt the facts concerning all of the elements of the offense,[11] and a properly raised affirmative defense is treated as though it were another element of that offense.[12] *Hill,* 934 P.2d at 826; *Vega v. People,* 893 P.2d 107, 111 (Colo.1995). If the trial court errs in disallowing an affirmative defense, then it improperly lowers the prosecution's burden of proof. *Vega,* 893 P.2d at 111. Because a defendant's constitutional right to due process is violated by an improper lessening of the prosecution's burden of proof, such error cannot be deemed harmless. *See Lybarger,* 807 P.2d at 582–83 (holding that improper jury instruction on affirmative defense could not be considered harmless where instructional error effectively removed affirmative defense from jury's consideration and thereby made unclear the prosecution's burden of proof as to that defense).[13] We review the record as a whole to determine whether it contains "any evidence tending to establish

the [affirmative] defense." *Idrogo v. People,* 818 P.2d 752, 754 (Colo.1991).

Here, in ruling that Garcia could not proceed under his claimed involuntary intoxication defense, the trial court did not make any finding as to whether Garcia had presented sufficient evidence to raise this affirmative defense. Instead, the trial court ruled, as a matter of law, that hypoglycemia could not constitute the affirmative defense of involuntary intoxication. Because we hold that the medical condition of insulin-induced hypoglycemia may, depending upon the particular facts and circumstances, constitute the affirmative defense of involuntary intoxication, the trial court's ruling was erroneous.

In determining whether this error constituted reversible error, we are presented with a unique situation. Unlike the typical case in which the trial judge determines at the end of trial whether sufficient evidence has been presented to raise an affirmative defense to be considered by the jury under a proper instruction, the trial judge here made a pretrial determination, as a matter of law, that Garcia could not present evidence of his insulin-induced hypoglycemic condition under the affirmative defense of involuntary intoxication. Because this ruling was made before trial, Garcia did not have the opportunity to introduce evidence of his defense. Garcia's pretrial proffer primarily concerned the proposed testimony of Dr. Bessesen. According to counsel, Dr. Bessesen would testify, based on Garcia's medical records, that Garcia is a diabetic, that he takes insulin for his condition, and that he has experienced hypoglycemic episodes in the past. Defense counsel claimed that Garcia was involuntarily intoxicated at the time of the crimes as a result of

---

**10.** Section 18–1–407(2), C.R.S. (2004), provides: "If the issue involved in an affirmative defense is raised, then the guilt of the defendant must be established beyond a reasonable doubt as to that issue as well as all other elements of the offense."

**11.** U.S. Const. amends. VI, XIV; Colo. Const. art. II, §§ 16, 25; *In re Winship,* 397 U.S. 358, 361–62, 90 S.Ct. 1068, 1071–72, 25 L.Ed.2d 368 (1970); *People v. Fichtner,* 869 P.2d 539, 543 (Colo.1994).

**12.** While a claimed affirmative defense is treated like an element of the offense, "[p]roof of an

affirmative defense is separate and distinct from proof of the elements of [that] offense." *Gorman v. People,* 19 P.3d 662, 668 (Colo.2000).

**13.** For cases not necessarily involving affirmative defense errors but involving reversible error because the prosecution's burden of proof was improperly lowered, see, for example, *Sullivan v. Louisiana,* 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) (improper definition of "reasonable doubt").

his hypoglycemia and stated that Dr. Bessesen would testify as to how hypoglycemia, in general, can affect a person. To establish that Garcia was hypoglycemic at the time of the crimes, defense counsel stated that he would have to "draw a link between the testimony of Dr. Bessesen and the testimony of the other evidence and other witnesses [at trial]." Defense counsel's proffer focused primarily on establishing whether Garcia was hypoglycemic at the time of the crimes and was incomplete as to whether Garcia was involuntarily intoxicated as a result of that alleged condition.

Hence, we are unable to determine from our review of the record whether Garcia met his burden of going forward with evidence to raise the affirmative defense of involuntary intoxication. Although evidence of Garcia's insulin-induced hypoglycemia was presented at trial, this evidence was presented only in the context of Garcia's insanity defense. We would only be speculating to determine the extent to which this evidence could be viewed as support for a defense of involuntary intoxication under the four-part test discussed earlier in this opinion. Because Garcia was denied the opportunity to meet his burden of going forward, and because the record before us is thus too limited to enable us to determine whether he satisfied his burden with respect to each element of his claimed defense of involuntary intoxication, we remand this case to the court of appeals with directions to return it to the trial court to permit both parties the opportunity to supplement the trial record, through either offers of proof or evidence, on the issue of whether Garcia is entitled to have a jury consider his affirmative defense of involuntary intoxication.

The trial court shall then make a decision whether Garcia's claimed affirmative defense of involuntary intoxication has been sufficiently raised for jury consideration. If the trial court determines that Garcia is entitled to raise this defense, the court shall vacate his convictions and order a new trial. In such a situation, disallowing a properly raised defense constitutes an unconstitutional lessening of the prosecution's burden of proof, and reversal of Garcia's convictions would therefore be required.

On the other hand, if the trial court determines that Garcia has not presented "some credible evidence" entitling him to raise the defense, then it shall affirm Garcia's convictions. Hence, we affirm in part, reverse in part, and remand this case to the court of appeals with directions to return it to the trial court to permit both parties the opportunity to supplement the record.

While reversal of Garcia's convictions may or may not be required upon remand, we need not consider the remaining issue before us on certiorari, i.e., whether the court of appeals erred in determining that the trial court improperly ordered a second mental health evaluation because it failed to make any findings of good cause for that additional examination, because this issue will likely not arise on remand even if a new trial were to be ordered. Before trial, Garcia's counsel adamantly objected to the trial court's ruling that evidence of Garcia's hypoglycemia could be presented only under a defense of insanity. Defense counsel stated, "I never discussed with Mr. Garcia insanity ... I never discussed with him that that was a potential plea.... [An IMC/Insanity defense] doesn't fit at all in this." Thus, absent the trial court's erroneous ruling that Garcia could present evidence of his insulin-induced hypoglycemia only under a defense of insanity, Garcia would not have entered a plea of not guilty by reason of insanity. Thus, even if Garcia receives a new trial and proceeds under the affirmative defense of involuntary intoxication at that trial, he presumably will not enter an insanity plea as well. If Garcia does not enter such a plea, there will be no need for one, much less two, mental health examinations. We therefore need not determine whether the trial court failed to abide by the statutory requirements when it ordered Garcia's second sanity examination.

## V. CONCLUSION

For the reasons stated, we affirm in part, reverse in part, and remand this case to the court of appeals with directions to return it to the trial court to permit both parties the opportunity to supplement the record.

Justice COATS dissents, and Justice KOURLIS and Justice RICE join in the dissent.

Justice COATS, dissenting.

While I have no quarrel with the proposition that insanity and intoxication are separate and distinct defenses, or even that insulin-induced hypoglycemia might conceivably produce a state legally defined as "intoxication" that was not "self-induced," I find nothing in the record of this case to suggest that the defendant was erroneously deprived of a fair opportunity to present a defense of intoxication, self-induced or otherwise. Because I think it clear that the defendant's own admissions in asserting insulin-induced hypoglycemia were inconsistent with a defense of intoxication that was not self-induced; and because any error in denying him evidence or instructions in that regard (had it actually occurred) would have been harmless, in light of the actual presentation of his proffered evidence to the jury with instructions that were indistinguishable from non-self-induced intoxication, I respectfully dissent.

The law of this jurisdiction relieves a person of criminal responsibility if he lacks the capacity to conform his conduct to the requirements of the law by reason of a disturbance of his mental or physical capacities, resulting from his knowing introduction of any substance into his body, as long as he either had no reason to know it would cause such a disturbance or he introduced it pursuant to medical advice. § 18–1–804(3) to (5), C.R.S. (2004). On the other hand, an accused has not committed the elements necessary for the commission of a crime at all if, at the time of doing a criminal act, he suffered from a mental defect that was not attributable to the voluntary ingestion of a psychoactive substance and was so severe it prevented him from forming a required culpable mental state. § 16–8–101.5(1)(b) and (2)(b), C.R.S. (2004). With regard to the latter defense, however, the legislature permits the admission of expert testimony in support only upon entering a plea of not guilty by reason of insanity, § 16–8–107(3), C.R.S. (2004); see People v. Low, 732 P.2d 622, 632 (Colo.1987), which then requires submission to a psychiat-

ric exam, § 16–8–105.5, C.R.S. (2004), waiver of certain medical privileges, § 16–8–103.6(2)(a), C.R.S. (2004), and commitment for treatment if successful, § 16–8–105.5(4).

As the majority acknowledges, the defendant offered expert opinion only to show that hypoglycemia affected his rational thought processes to a degree that prevented him from forming the culpable mental state required for the charged offenses. Maj. op. at 778. To the extent that this expert opinion testimony could be considered to have been offered to prove that the defendant's condition was not self-induced and that by reason of this condition, he lacked "the capacity to conform his conduct to the requirements of the law," as distinguished from proving that he was incapable of forming a culpable mental state essential to violating the law in the first place, it would therefore not have amounted to evidence solely of the impaired mental condition aspect of insanity, and its admission arguably should not have been limited to the entry of such a plea. Such an assertion was, however, never made by the defendant, who argued, much to the contrary, merely that despite affecting his ability to form a culpable mental state, insulin-induced hypoglycemia was a physical, rather than a mental, condition.

In any event, the defendant's expert witness was properly rejected because his opinion of the defendant's hypoglycemic condition was premised upon the defendant's admissions to the effect that this condition resulted, not from *following* medical advice, but rather from *failing to follow* medical advice by over-medicating in anticipation of eating foods he knew he should not eat and even then, by failing to eat anything after over-medicating, despite his prior bad experiences from acting similarly in the past. *See People v. Garcia,* 826 P.2d 1259, 1263–64 (Colo.1992) (holding defendant not entitled to instructions contrary to his own admissions, despite other credible evidence). The defendant's evidence of "intoxication" was at one and the same time, evidence of "self-induced intoxication," as distinguished from intoxication caused by unsuspecting reliance on medical advice. And the defendant, of course, chose not to assert self-induced intoxication, which

could have done no more, even if successful, than mitigate his otherwise intentional conduct in committing first degree assault.

Moreover, even if the court's rejection of the defendant's tendered expert on insulin-induced hypoglycemia, except as his opinion was relevant to an impaired mental condition, had been error, it would have been harmless in light of the defense actually presented to the jury. When the court ruled that the expert's proposed opinion testimony was relevant only to prove an impaired mental condition, the defendant chose to proceed by pleading insanity, rather than simply challenging the ruling. As a result, the defendant's expert's explanation of hypoglycemia was presented in its entirety to the jury. In addition, the psychiatric expert who examined the defendant testified for the defense that hypoglycemia caused by a combination of insulin and not eating (as the defendant admitted) amounted to a mental defect preventing him from behaving intentionally or knowingly, and therefore made him insane within the statutory definition.

The evidence presented by the defendant was clearly, therefore, to the effect that his hypoglycemia was not attributable to the voluntary ingestion of a psychoactive substance. Although the prosecution disputed that hypoglycemia rendered the defendant incapable of forming the culpable mental states required for his crimes, neither it nor any instruction by the court disagreed or suggested that the defendant's insulin-induced hypoglycemia (to the extent that he suffered from this condition at all) was attributable to the voluntary ingestion of a psychoactive substance. Similarly, the jury was never instructed about "intoxication," as a separate defense, or told that intoxication cannot in itself amount to insanity.

The jury therefore considered and rejected the defendant's insanity defense, without having any reason to believe that hypoglycemia brought about by an improper balance of insulin and food intake could not produce, or was in any way legally inconsistent with a defense of, insanity. The jury verdict simply, and necessarily, rejected the defendant's assertion that hypoglycemia prevented him from acting with the required culpable mental state, which amounted not only to a rejection of his insanity defense but also to any defense of non-self-induced intoxication, had there been sufficient evidence to bring one before the jury.

Although insanity and non-self-induced intoxication are separate and distinct defenses, each with its own requirements and consequences, when a mental disturbance or defect is allegedly attributable to the *involuntary* ingestion of an arguably psychoactive substance and the asserted effect is to prevent the formation of a required culpable mental state, any differences between the two are subtle, at best. Had the jury found the defendant not guilty by reason of insanity, the automatic commitment consequence of a successful insanity plea would have presented a compelling need to make the distinction. Where, as here, however, the jury is presented with and rejects an insanity defense, upon instructions that fail to distinguish it from a defense of non-self-induced intoxication, no need for making such a fine distinction arises at all.

Even if the defendant had not made admissions depriving him of any entitlement to instructions on a defense of non-self-induced intoxication, where he was permitted to adequately present his theory of insulin-induced hypoglycemia to the jury, without any suggestion that the involuntary ingestion of insulin was inconsistent with a defense of insanity, any error would necessarily have been harmless.

I therefore respectfully dissent.

I am authorized to state that Justice KOURLIS and Justice RICE join in this dissent.