Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us.  Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
March 9, 2020

**2020 CO 20**

**No. 18SC406** *People v. Cali*—**Amendatory Legislation**—**Post-Conviction Motions**—
**Theft.**

This case requires the supreme court to consider whether a defendant is
entitled to the benefit of amendatory legislation when the amendment took effect
while the defendant's case was pending on direct appeal but the defendant did
not raise the issue of the amendatory legislation until after his conviction became
final.

The court concludes that a defendant is not entitled to the benefit of a
statutory amendment when the defendant does not seek relief based on that
amendatory legislation until after his or her conviction becomes final.

Accordingly, the court reverses the judgment of the division below.

# The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2020 CO 20

### Supreme Court Case No. 18SC406
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 15CA2082

**Petitioner:**

The People of the State of Colorado,

v.

**Respondent:**

Osmundo Rivera Cali.

### Judgment Reversed
*en banc*
March 9, 2020

**Attorneys for Petitioner:**
Philip J. Weiser, Attorney General
Kevin E. McReynolds, Assistant Attorney General
*Denver, Colorado*

**Attorneys for Respondent:**
The Noble Law Firm, LLC
Antony Noble
*Lakewood, Colorado*

**JUSTICE GABRIEL** delivered the Opinion of the Court.

¶1     This case requires us to consider whether a defendant is entitled to the benefit of amendatory legislation when the amendment took effect while the defendant's case was pending on direct appeal but the defendant did not raise the issue of the amendatory legislation until after his conviction became final.[1]

¶2     We conclude that a defendant is not entitled to the benefit of a statutory amendment when the defendant does not seek relief based on that amendatory legislation until after his or her conviction becomes final.

¶3     Accordingly, we reverse the judgment of the division below.

## I. Facts and Procedural History

¶4     The prosecution charged Osmundo Cali with one count of theft of a thing of value of one thousand dollars or more but less than twenty thousand dollars, then a class four felony, as well as with one count of theft by receiving and two habitual criminal counts.  The charges stemmed from allegations that Cali took metal storm grates from a construction site and sold them to a scrap metal processing company. The evidence established that the stolen grates were worth approximately $2,616, based on the price paid for them by the construction company.

---

[1] Specifically, we granted certiorari to review the following issue:

> Whether the court of appeals erred by applying a statutory amendment to a final conviction.

¶5     Cali's case proceeded to trial, a jury convicted him of the two substantive offenses, and the trial court adjudicated him a habitual criminal. The court then sentenced Cali to eighteen years on each of the substantive counts, to be served concurrently in the Department of Corrections.

¶6     Cali appealed, arguing that (1) the trial court had plainly erred in failing to instruct the jury properly on the elements of theft; (2) Cali could not be convicted of both theft and theft by receiving for offenses involving the same property; (3) the prosecution had presented insufficient evidence to prove that Cali had two prior criminal convictions; and (4) the trial court should have conducted a proportionality review of his sentence. The division agreed that Cali could not be convicted of both theft and theft by receiving of the same property. *See People v. Cali*, No. 12CA1730, slip op. at 1 (Oct. 2, 2014). It therefore vacated his conviction for theft, allowed the theft by receiving conviction to stand, and did not address the alleged instructional error on the theft count. *Id.* The division, however, affirmed Cali's habitual criminal convictions and after conducting its own abbreviated proportionality review, concluded that Cali's sentence was not grossly disproportionate. *Id.* This court subsequently denied Cali's petition for a writ of certiorari, and the mandate issued on May 11, 2015.

¶7     On June 5, 2013, while Cali's appeal was pending, an amendment to the theft statute became effective. *See* Ch. 373, secs. 1–3, § 18-4-410, 2013 Colo. Sess. Laws

3

2195, 2195–98. As pertinent here, the amended statute eliminated the separate crime of theft by receiving and incorporated that offense into the general theft provision. *Id.* It also modified the classifications for theft. *Id.* at 2196. Under the new statutory provisions, Cali's offense would have been classified as a class six felony. *Id.* Although these amendments took effect prior to the date on which Cali's appellate counsel filed the opening brief in Cali's direct appeal, Cali did not address in his appeal the applicability of these provisions to his case.

¶8    After the court of appeals issued its mandate in Cali's case, Cali filed a pro se petition for postconviction relief pursuant to Crim. P. 35(c). In this petition, Cali raised, as pertinent here, a claim for relief based on a "Substantial Change In The Law." Specifically, he asserted, for the first time, that under the newly amended statute, he could only have been convicted of a class six felony, which would have carried a presumptive sentencing range of one year to eighteen months imprisonment, rather than the eighteen years that he had received under the old provision. *See* §§ 18-1.3-401(1)(a)(V)(A), -801(1.5), C.R.S. (2019) (setting forth the presumptive sentencing ranges for felonies committed during the time period at issue and the mandatory aggravated sentence for those adjudged habitual criminals based on their having two prior felony convictions within ten years of the date of commission of the present offense).

4

¶9 The postconviction court denied Cali's petition without a hearing. As pertinent here, the court concluded that the amended statute did not entitle Cali to relief because (1) the law changed after Cali's sentence was imposed; (2) his sentence had been affirmed on appeal; and (3) the amended theft statute was intended to have prospective, not retroactive, application.

¶10 Cali appealed again, and in a split, published opinion, a division of the court of appeals reversed. *People v. Cali*, 2018 COA 61, __ P.3d __. The majority concluded that its decision was controlled by this court's opinion in *People v. Boyd*, 2017 CO 2, 387 P.3d 755, which the majority interpreted as holding "that a convicted defendant is entitled to the benefit of changes to the State's prosecutorial authority if those changes take effect before the conviction and sentence are final on appeal—irrespective of retroactivity principles." *Cali*, ¶ 13. In the majority's view, the State lost its authority to prosecute Cali for a class four felony under the prior version of the theft statute once the amended statute went into effect. *Id.* at ¶¶ 13–14. The majority further determined that Cali's postconviction claim was cognizable under section 18-1-410(1)(g), C.R.S. (2019), and Crim. P. 35(c)(2)(VI) as a collateral attack on Cali's class four felony conviction because each of those provisions authorized a defendant to file a postconviction motion based on "[a]ny grounds otherwise properly the basis for collateral attack upon a criminal judgment," even after that judgment has been affirmed on appeal. *Cali*, ¶ 19

5

(quoting § 18-1-410(1)(g) and Crim. P. 35(c)(2)(VI)). Concluding that Cali had asserted a timely postconviction claim, the majority thus determined that he was entitled to reversal of his conviction of the class four felony of theft by receiving and that his case should be remanded for entry of a judgment of conviction and sentencing on class six felony theft. *Id.* at ¶ 21.

¶11 Judge Nieto dissented, deeming *Boyd* distinguishable from the present case. *People v. Cali*, 2018 COA 61, ¶ 31, __ P.3d __ (Nieto, J., dissenting). Judge Nieto initially noted that, unlike Boyd's conviction, which was on direct appeal and not final at the time the law changed, Cali's conviction was final before he filed his Crim. P. 35(c) motion, and this court has consistently applied amendatory legislation only to convictions that were not final. *Id.* Judge Nieto further observed that *Boyd* made clear that it was *not* addressing the effect of amendatory legislation on final convictions. *Id.* at ¶ 32. Finally, Judge Nieto described what he viewed as "the fundamental difference" between the constitutional amendment at issue in *Boyd* and the statutory amendment at issue here: the amendment at issue in *Boyd* removed the State's authority to prosecute for the offenses there at issue whereas the amendment here left intact the state's authority to prosecute theft crimes. *Id.* at ¶ 33. Judge Nieto thus concluded that Cali was not entitled to the relief that he had requested. *Id.* at ¶ 40.

6

¶12 The People then petitioned this court for certiorari review, and we granted the petition.

## II. Analysis

¶13 We begin by discussing the applicable standard of review and principles of statutory construction. We then turn to the merits of Cali's claim and conclude that defendants are not entitled to the benefit of amendatory legislation when they first seek relief based on that legislation after their convictions are final, even if the legislation went into effect before their convictions became final. Finally, we address Cali's claim of ineffective assistance of appellate counsel, which he raises for the first time in this court, and we conclude that that claim is not properly before us.

### A. Standard of Review and Principles of Statutory Construction

¶14 We review questions of statutory interpretation de novo. *People v. Stellabotte*, 2018 CO 66, ¶ 10, 421 P.3d 174, 176. We likewise review de novo a postconviction court's decision to deny a Crim. P. 35(c) motion without an evidentiary hearing. *People v. Genrich*, 2019 COA 132M, ¶ 39, __ P.3d __.

¶15 In construing a statute, our primary purpose is to ascertain and give effect to the legislature's intent. *McCoy v. People*, 2019 CO 44, ¶ 37, 442 P.3d 379, 389. To do this, we look first to the statutory language, giving words and phrases their

plain and ordinary meanings. *Id.* We read these words and phrases in context, and we construe them according to the rules of grammar and common usage. *Id.*

¶16 In addition, we must endeavor to effectuate the purpose of the legislative scheme. *Id.* at ¶ 38, 442 P.3d at 389. In doing so, we read that scheme as a whole, giving consistent, harmonious, and sensible effect to all of its parts and avoiding constructions that would render any words or phrases superfluous or that would lead to illogical or absurd results. *Id.*

¶17 We do not add words to a statute or subtract words from it. *Turbyne v. People*, 151 P.3d 563, 567 (Colo. 2007). And if different statutory provisions cannot be harmonized, then the specific provision will control over the general provision. *Beren v. Beren*, 2015 CO 29, ¶ 11, 349 P.3d 233, 239; *see also* § 2-4-205, C.R.S. (2019) (providing that if a general provision conflicts with a special or local provision and the conflict is irreconcilable, then "the special or local provision prevails as an exception to the general provision, unless the general provision is the later adoption and the manifest intent is that the general provision prevail").

¶18 If a statute is clear and unambiguous, then we need not resort to further aids of statutory construction. *People v. Rojas*, 2019 CO 86M, ¶ 12, 450 P.3d 719, 721.

## B. Applicability of Amendatory Legislation

¶19 Cali asserts that he should receive the benefit of the amended theft statute that passed and became law during the pendency of his appeal, even though he

did not raise the issue of the amendatory legislation's applicability until after his conviction was final. We are not persuaded.

¶20    Section 18-1-410 governs the postconviction remedies available to criminal defendants. That statute provides, in pertinent part:

> [E]very person convicted of a crime is entitled as a matter of right to make applications for postconviction review. Except as otherwise required by subsection (1.5) of this section, an application for postconviction review must, in good faith, allege one or more of the following grounds to justify a hearing thereon:
>
> . . . .
>
> (f)(I) That there has been significant change in the law, applied to the applicant's conviction or sentence, allowing in the interests of justice retroactive application of the changed legal standard.
>
> (II) *The ground set forth in this paragraph (f) may not be asserted if, prior to filing for relief pursuant to this paragraph (f), a person has not sought appeal of a conviction within the time prescribed therefor or if a judgment of conviction has been affirmed upon appeal.*

§ 18-1-410(1) (emphasis added).

¶21    As we indicated in *Stellabotte*, a decision that issued after the division's ruling here, under this statute, a defendant is entitled to the benefit of amendatory legislation that has mitigated the penalties for the crime at issue as long as the defendant has requested such relief before his or her conviction has become final (i.e., after the expiration of the time for appeal or upon the issuance of the mandate following an appeal). *See Stellabotte*, ¶ 26, 421 P.3d at 179 (noting that under section 18-1-410(1)(f), criminal defendants are entitled to the benefit of amendatory

9

legislation that became effective at any time before the defendants' convictions became final on direct appeal); *People v. Thomas*, 525 P.2d 1136, 1138 (Colo. 1974) (construing the predecessor to section 18-1-410(1)(f) and noting that applying changed legal standards is "especially appropriate" when a change in the law reducing a defendant's sentence intervenes before "conviction is had and sentence is imposed").

¶22 Indeed, we have long held that a trial court lacks the authority to apply amendatory legislation to a defendant's judgment of conviction after that judgment becomes final. *See People v. Herrera*, 516 P.2d 626, 628–29 (Colo. 1973) (noting that after a final conviction, only the Governor has the power to reduce a sentence and that any effort by a court to exercise that power would violate the separation of powers doctrine); *see also People v. Arellano*, 524 P.2d 305, 306 (Colo. 1974) (construing the predecessor to section 18-1-410(1)(f) and noting that *Herrera* "drew the line of finality beyond which further judicial proceedings could not be maintained").

¶23 Applying the foregoing principles in *Arellano*, 524 P.2d at 306, we concluded that the defendant was not entitled to the benefit of amendatory legislation that substantially reduced the penalty for the crime of conviction when he did not raise the issue until after his conviction was final. There, we addressed circumstances that were nearly identical to those presented here. The defendant had been

convicted of possession of narcotic drugs. *Id.* He appealed, and a division of the court of appeals affirmed his conviction. *Id.* While his appeal was pending, however, the General Assembly had amended the statute under which he had been convicted and sentenced, and the amended provision "substantially reduce[d] the penalty for violation thereof." *Id.* After losing his appeal, the defendant filed a motion for postconviction relief, requesting a reduction in his sentence to conform to the new penalty provisions. *Id.* The trial court denied this motion, and we ultimately affirmed that decision, concluding that because the defendant had exhausted his appeals and his conviction had become final before he filed his motion for postconviction relief, the trial court "was without jurisdiction to entertain his motion for relief." *Id.* We were not persuaded otherwise by the fact that the amended legislation took effect during the course of Arellano's direct appeal. *Id.* (noting that *Herrera* had announced a constitutional rule that "after conviction and exhaustion of appellate remedies, relief from a sentence validly imposed may not be obtained through the judiciary, but rather the remedy therefor lies in the executive department by way of commutation").

¶24    In our view, *Arellano* is dispositive here. Specifically, because Cali's conviction became final upon the issuance of the mandate from the court of appeals and he did not file his petition for postconviction relief until after that date, the trial court could not grant him the relief that he requested.

11

¶25 In reaching this conclusion, we are not persuaded by Cali's contention that, even if he is not entitled to relief under subsection 18-1-410(1)(f), he has prima facie claims for postconviction relief under subsection 18-1-410(1)(g). That provision states that a person convicted of a crime may make an application for postconviction relief based on "[a]ny grounds otherwise properly the basis for collateral attack upon a criminal judgment." § 18-1-410(1)(g). Cali asserts that his claim under this provision does not seek a modification of his sentence based on amendatory legislation, which would fall under subsection (1)(f), but rather it provides a remedy under Crim. P. 35(c)(3)(V) to restore a right to which he was entitled. The right, he argues, was the right to the benefit of the amended theft statute to which Cali was entitled on direct appeal, and he asserts that he is entitled to the restoration of that right because he received ineffective assistance of counsel during his direct appeal.

¶26 Under Cali's interpretation of section 18-1-410(1), the pre-finality requirement set forth in subsection (1)(f) would not apply in any case in which a defendant has alleged that he or she received the ineffective assistance of appellate counsel. In our view, however, such an exception would swallow the rule and render the limit set forth in subsection (1)(f) meaningless. As noted above, we must avoid such constructions. *See McCoy*, ¶ 38, 442 P.3d at 389.

¶27    We likewise are unpersuaded by Cali's argument that our decision in *Boyd*, ¶ 1, 387 P.3d at 756, controls this case.  In *Boyd*, the defendant had been convicted of, among other things, possession of less than one ounce of marijuana.  *Id.* at ¶ 2, 387 P.3d at 756.  Prior to the filing of Boyd's direct appeal, however, Amendment 64, which legalized the possession of up to one ounce of marijuana for personal use, became effective.  *Id.*  Boyd then filed a notice of appeal and subsequently argued in the court of appeals that her conviction for possession of less than one ounce of marijuana should be vacated based on Amendment 64.  *Id.*

¶28    In a split decision, a division of the court of appeals agreed and reversed Boyd's possession conviction, and we subsequently affirmed that decision, concluding that Amendment 64 "nullified the State's authority to continue to prosecute Boyd on appeal" and "rendered inoperative the pertinent language of [the statute under which Boyd was convicted] because it legalized what the statute had prohibited."  *Id.* at ¶¶ 2, 9–10, 387 P.3d at 756, 58.  We thus stated:

> Amendment 64 deprived the State of its power to continue to prosecute cases where there was a nonfinal conviction for possession of less than one ounce of marijuana and where there was a pending right to appeal (subsequently exercised by filing a timely notice of appeal) at the time the Amendment became effective.

*Id.* at ¶ 10, 387 P.3d at 758.

¶29    For two reasons, *Boyd* is distinguishable.

¶30 First, unlike in *Boyd*, the statutory amendment at issue in the present case did not legalize the conduct that formed the basis of Cali's conviction. *Compare* § 18-4-401(2)(c), C.R.S. (2011) (defining theft as a "class 4 felony if the value of the thing involved is one thousand dollars or more but less than twenty thousand dollars"), *with* Ch. 373, sec. 1, § 18-4-401(2)(f), 2013 Colo. Sess. Laws 2195, 2196 (defining theft as a "class 6 felony if the value of the thing involved is two thousand dollars or more but less than five thousand dollars"). Rather, the amendment merely changed the classifications of theft, thereby resulting in reduced presumptive sentencing ranges for theft crimes, including the crime at issue here.

¶31 Second, in *Boyd*, we addressed a case in which the defendant had sought the benefit of the amendatory legislation *before* her conviction was final. *Boyd*, ¶ 2, 387 P.3d at 756. We did not address the scenario before us today, in which a defendant seeks the benefit of amendatory legislation *after* his or her conviction is final.

¶32 For these reasons, we conclude that Cali is not entitled to the benefit of the amendatory legislation here.

## C. Ineffective Assistance of Counsel

¶33 Cali alternatively asserts that even if he is not entitled to seek the benefit of the amended theft statute at this stage of his case (i.e., after his judgment of

14

conviction was final), he has a meritorious claim that he was denied the effective assistance of appellate counsel when counsel failed to request the benefit of the amended theft statute in the course of Cali's direct appeal. Although Cali concedes that he did not raise this argument in his pro se postconviction motion, he argues that his motion should be broadly construed so as to encompass such a claim. We again are unpersuaded.

¶34 "Pleadings by pro se litigants must be broadly construed to ensure that they are not denied review of important issues because of their inability to articulate their argument like a lawyer." *Jones v. Williams*, 2019 CO 61, ¶ 5, 443 P.3d 56, 58. It is not this court's role, however, to rewrite a pro se litigant's pleadings. *See Goodwin v. Iowa Dist. Court*, 936 N.W.2d 634, 643 n.2 (Iowa 2019). Nor may we act as an advocate for a pro se litigant. *Id.*; *see also Burghart v. Corr. Corp. of Am.*, 224 P.3d 1278, 1280–81 (Okla. Civ. App. 2009) ("This liberal construction of pro se pleadings does not, however, require the court to act as the pro se party's advocate."). Accordingly, although we will broadly construe a pro se litigant's pleadings to effectuate the substance, rather than the form, of those pleadings, we will not consider issues not raised before the district court in a motion for postconviction relief. *See DePineda v. Price*, 915 P.2d 1278, 1280 (Colo. 1996).

¶35 Here, Cali's petition for postconviction relief asserted (1) a violation of double jeopardy when the trial court instructed the jury on both theft and theft by

15

receiving based on the same underlying conduct; (2) an inadequate advisement regarding his right to testify; and (3) the existence of a substantial change in the law that, had it been applied in his case, would have reduced the level of felony and presumptive sentence for his conduct. Construing these claims broadly, as we must, we cannot say that Cali raised an ineffective assistance of counsel claim in his petition.

¶36 Accordingly, we will not consider such a claim for the first time in this court.

### III. Conclusion

¶37 Because Cali's conviction became final before he first requested the application of the amended theft statute to his case, he was not entitled to receive the benefit of that amendatory legislation, even though the amendment went into effect during the pendency of his direct appeal. Moreover, because Cali did not raise a claim of ineffective assistance of appellate counsel in his postconviction motion in the district court, such a claim is not properly before us.

¶38 For these reasons, we reverse the judgment of the division below.

16