1 

2026 CO 5
 The People of the State of Colorado, Petitioner v. Isaac U. Mion, Respondent 
No. 24SC2
Supreme Court of Colorado
January 26, 2026

2

 Certiorari to the Colorado Court of Appeals Court of Appeals Case No. 21CA1230. 
 Judgment Reversed 
 Attorneys for Petitioner: Philip J. Weiser, Attorney General Jaycey DeHoyos, Assistant Attorney General Denver, Colorado. 
 Attorneys for Respondent: Shulman Chase LLC Joseph Chase Denver, Colorado. 
 
3

 JUSTICE BOATRIGHT delivered the Opinion of the Court, in which JUSTICE GABRIEL, JUSTICE SAMOUR, and JUSTICE BERKENKOTTER joined. CHIEF JUSTICE MARQUEZ dissented. JUSTICE HOOD dissented. 
 en banc 
 
4

 OPINION 
 BOATRIGHT, JUSTICE. 
 ¶1 Isaac U. Mion was charged with aggravated robbery, menacing, and criminal mischief after an episode of erratic and violent behavior. At trial, Mion testified that his behavior was caused by "something unknown" in a joint he smoked; he thus sought to raise the affirmative defense of involuntary intoxication. That defense applies when a defendant, "by reason of intoxication . . . lacks capacity to conform his conduct to the requirements of the law," provided that his intoxication was not "self-induced." § 18-1-804(3), C.R.S. (2025). "Self-induced intoxication" means that a defendant's intoxication was voluntary - "caused by substances which the defendant knows or ought to know have the tendency to cause intoxication and which he knowingly introduced . . . into his body."[1] § 18-1-804(5) (emphases added). 
 ¶2 The trial court declined to instruct the jury on the involuntary intoxication defense, but a division of the court of appeals reversed. People v. Mion, 2023 COA 110M, 544 P.3d 111. The division concluded that the statute did not adequately address situations where "multiple intoxicants" are involved and held that the defense "is legally cognizable when (1) a defendant knowingly ingests what he believes to be a particular intoxicant; (2) in so doing, he unknowingly ingests a 
 
5

 different intoxicant; and (3) it is the different intoxicant that deprives him of the capacity to conform his conduct to the requirements of the law." Id. at ¶¶ 2, 37, 544 P.3d at 112, 117 (emphases altered). Because this "was the essence of Mion's involuntary intoxication claim," the division concluded that Mion's involuntary intoxication defense was legally cognizable, entitling him to the jury instruction. Id. at ¶ 2, 544 P.3d at 112. We granted certiorari.[2] 
 ¶3 The certiorari question essentially addresses whether the division erroneously eliminated consideration of moral culpability or blameworthiness in its rule. As we see it, the division's rule does not consider "innocent mistake" or any level of blameworthiness because it ultimately defines substance as each "particular intoxicant." As we explore below, segmenting potential intoxicants like this renders moot the "ought to know" prong of the voluntary intoxication analysis under section 18-1-804(5) and curtails a factfinder's ability to consider all of the circumstances involved in obtaining and consuming the intoxicating substance.[3] 
 
6

 ¶4 We now reverse and hold that, when a defendant contends that there are multiple intoxicants in a product that he consumed, a substance per section 18-1-804(5) is the entire product, not each "particular intoxicant" within the product. Thus, we conclude that Mion was voluntarily intoxicated and therefore barred from raising the involuntary intoxication defense because his condition was caused by knowingly smoking a joint that he knew or ought to have known had the tendency to intoxicate. 
 I. Facts and Procedural History 
 ¶5 A security guard found Mion sleeping on the grounds of the Denver City and County Building. When the guard asked Mion to leave, Mion acted in an agitated and erratic manner. He grabbed the guard's phone from his hand, and when a second security guard approached to call 911, Mion knocked the phone out of her hand, cracking the screen. After running away, Mion began yelling at a civilian and struck the civilian's truck with a club-like object after the civilian entered his truck. Officers eventually arrested Mion after he tried to submerge himself in a creek. During the arrest, Mion yelled at the officers to shoot him and 
 
7

 said that he wanted to die. Following these events, the People charged Mion with aggravated robbery, menacing, and criminal mischief. 
 ¶6 At trial, Mion testified that, earlier that night, he stopped in a doorway in downtown Denver to drink beer and work on his bike with a "street guy" he knew. Mion admitted that he did not know this man's name, but when the man offered Mion a joint, Mion accepted it and took "two hits." About twenty minutes later, Mion began feeling paranoid and later blacked out, claiming that he remembered nothing else from that evening. 
 ¶7 Relying on this testimony, Mion requested a jury instruction on the affirmative defense of involuntary intoxication, alleging that there was "something unknown" in the joint he smoked, like a stimulant, that caused his erratic behavior. The trial court found this claim to be "pure speculation" and denied Mion's request. A jury found Mion guilty of robbery, menacing, and criminal mischief. 
 ¶8 A division of the court of appeals reversed. Mion, ¶ 56, 544 P.3d at 120. The division concluded that the involuntary intoxication statute does not "squarely address . . . the ingestion of multiple intoxicants." Id. at ¶ 37, 544 P.3d at 117. It then held that the affirmative defense of involuntary intoxication "is legally cognizable when (1) a defendant knowingly ingests what he believes to be a particular intoxicant; (2) in so doing, he unknowingly ingests a different intoxicant; 
 
8

 and (3) it is the different intoxicant that deprives him of the capacity to conform his conduct to the requirements of the law." Id. at ¶ 2, 544 P.3d at 112 (emphases altered). The division held that Mion's defense under this three-part test was legally cognizable given that this "was the essence of Mion's involuntary intoxication claim." Id. We granted certiorari. 
 II. Analysis 
 ¶9 We begin by addressing our standard of review and applicable principles of statutory construction. Next, we demonstrate how the definition of "[s]elf-induced intoxication," which, when met, precludes defendants from raising the involuntary intoxication defense under section 18-1-804, consists of two distinct prongs: (1) whether a defendant "knowingly introduce[s]" a substance; and (2) whether the defendant "knows or ought to know" of the substance's tendency to intoxicate. § 18-1-804(5). We then conclude that the term "substances" in section 18-1-804(5) is ambiguous, allowing us to consider the consequences of various constructions to effectuate the legislature's intent. From there, we explain how in cases such as this one, where a defendant contends that there are multiple intoxicants in a product that caused their intoxication, construing the substance as the entire product, rather than as any "particular intoxicant," reflects legislative intent. Finally, we re-examine whether Mion was entitled to raise an involuntary 
 
9

 intoxication defense under this construction of the statute and determine that he was not. 
 A. Standard of Review and Principles of Statutory Construction 
 ¶10 Whether the division correctly interpreted section 18-1-804 is a question of law that we review de novo. People v. Garcia, 113 P.3d 775, 780 (Colo. 2005). 
 ¶11 In construing a statute to give effect to the legislative intent, we start with the language of the statute, giving words and phrases their plain and ordinary meanings. See, e.g., People v. Cali, 2020 CO 20, ¶ 15, 459 P.3d 516, 519. However, "[a] statute is ambiguous when it is reasonably susceptible of multiple interpretations." McCoy v. People, 2019 CO 44, ¶ 38, 442 P.3d 379, 389. If a statute is ambiguous, a court may consider other aids of construction, such as the legislative history, the purpose of the statute, and the consequences of a particular construction to give effect to legislative intent. § 2-4-203(1), C.R.S. (2025); McCoy, ¶ 38, 442 P.3d at 389. 
 B. Colorado's Involuntary Intoxication Defense 
 ¶12 The legislature has established involuntary intoxication as an affirmative defense to all crimes: "A person is not criminally responsible for his conduct if, by reason of intoxication that is not self-induced at the time he acts, he lacks capacity to conform his conduct to the requirements of the law." § 18-1-804(3) (emphasis added). A defendant's intoxication is self-induced, or voluntary, when it is caused 
 
10

 by substances that the defendant: (1) "knowingly introduced" and that (2) he "knows or ought to know" cause intoxication: 
 

 "Self-induced intoxication" means intoxication
 caused by substances which the defendant knows or ought
 to know have the tendency to cause intoxication and
 which he knowingly introduced or allowed to be
 introduced into his body, unless they were introduced
 pursuant to medical advice or under circumstances that would
 afford a defense to a charge of crime.
 

 § 18-1-804(5) (emphases added). 
 ¶13 Therefore, when analyzing whether a defendant may raise the affirmative defense of involuntary intoxication under section 18-1-804, a court must determine whether a defendant has offered some evidence that their intoxication was not selfinduced. The affirmative defense of involuntary intoxication is unavailable if a defendant's intoxication was self-induced - if their conduct was caused by one or more "substances" which they both (1) "knowingly introduced" and (2) knew or ought to have known would have a tendency to cause intoxication. § 18-1-804(5). ¶14 This definition entails two requisite levels of responsibility or blameworthiness involved in voluntarily intoxicating oneself.[4] A person acts "[k]nowingly" when they have an awareness of the nature of their conduct and the 
 
11

 circumstances. § 18-1-501(6), C.R.S. (2025); People v. Krovarz, 697 P.2d 378, 381-82 (Colo. 1985); see also People v. Etchells, 646 P.2d 950, 951 (Colo. 1982) ("The statutory definition of 'knowingly' requires that the jury find that the defendant was 'aware,' not 'should have been aware.'" (quoting § 18-1-501(6))). 
 ¶15 Conversely, the phrase "ought to know" engenders a reasonableness standard: what a reasonable person would have or should have known under the circumstances. See People v. Turner, 680 P.2d 1290, 1293 (Colo.App. 1983) (holding that the jury is to weigh the evidence "in light of . . . common knowledge" when determining if the defendant knew or should have known of the intoxicating consequences of ingesting excessive doses of a prescription drug); see also Gatewood v. State, 654 S.W.3d 239, 245 (Tex. Ct. App. 2022) (finding that a jury could have found the defendant's intoxication to be "voluntary" because "he should have known through the exercise of reasonable care that the cigarette . . . could contain [synthetic marijuana]" (emphases added)). 
 ¶16 Thus, if Mion's intoxication was caused by a substance which he "knowingly introduced" and knew or ought to have known had the tendency to intoxicate, then his intoxication was self-induced, and he was not entitled to a jury instruction on the involuntary intoxication defense. But, as we explore below, this analysis necessarily rests on how substance is construed under the facts of this case. 
 
12

 C. Substance Is Ambiguous 
 ¶17 The People argue that a substance per section 18-1-804(5) refers to the whole intoxicating product-here, the whole joint-rather than any of its speculated components. Thus, the People argue that Mion's intoxication was self-induced because he "knowingly introduced" the joint and knew or ought to have known that it had the tendency to intoxicate. Conversely, Mion characterizes the substance here as the "something unknown" which he suspects was inside the joint, rather than the entire joint. He thus claims to have been involuntarily intoxicated because when he took "two hits" of the joint, he only "knowingly introduced" marijuana, not the "something unknown" that he maintains caused his criminal behavior that night. The division agreed with Mion, stating that "courts must focus on the particular intoxicant that allegedly deprived the defendant of the capacity to conform his conduct to the requirements of the law." Mion, ¶ 37, 544 P.3d at 117. 
 ¶18 The word substance is not defined by the statute. Nor have we previously considered whether that term applies to an entire product (as the People propose) or to that product's individual ingredients (as Mion proposes). Moreover, both the People's and Mion's interpretations of this undefined term are reasonable. Accordingly, we conclude that this term is ambiguous, allowing us to consider the consequences of each construction to determine the legislature's intent. 
 
13

 D. Defining the Substance as the Entire Product Aligns with Legislative Intent 
 ¶19 In its holding, the division essentially substituted the phrase "particular intoxicant" for the word "substances" and concluded that "courts must focus on the particular intoxicant that allegedly deprived the defendant of the capacity to conform his conduct to the requirements of the law." Id. In so doing, the division interpreted the "substances" to mean each theoretical ingredient contained in the joint Mion smoked. Although the division recognized that Mion's behavior in accepting a joint from a person he barely knew was reckless, it concluded that this was not relevant as a "matter of law" because "nothing in the involuntary intoxication statute refers to the concept of recklessness." Id. at ¶ 41, 544 P.3d at 117 (second emphasis added). 
 ¶20 Under the division's construction of substance as each "particular intoxicant" in a product, a defendant could always claim that they did not "knowingly introduce[]" a substance (by claiming that they consumed an intoxicating product containing "something unknown"). The involuntary intoxication analysis would likely never reach the "ought to know" prong, leading to a practical erasure of this language. As a result, the division's rule focuses only on the defendant's actual awareness and eliminates consideration of their reasonableness. We deem this to be contrary to the legislature's intent. 
 
14

 ¶21 Consider the following hypothetical. Someone eats a pot brownie with a label that clearly indicates that it contains tetrahydrocannabinol ("THC"). This causes their intoxication and subsequent criminal conduct. If we determine that the substance is the THC inside the pot brownie (as opposed to the pot brownie itself), the person could easily claim that they did not look at the label and thus were not actually aware that the pot brownie contained THC. The analysis ends there-they would be entitled to raise the defense as a matter of law because they demonstrated that they did not "knowingly introduce[]" a substance. It would be irrelevant whether they ought to have known that the pot brownie would have an intoxicating effect. But, if we determine that the substance is the pot brownie, then the defendant plainly "knowingly introduced" the substance. Thus, the issue would become whether the defendant knew or should have known that the pot brownie would have an intoxicating effect, meaning the court would consider their reasonableness. Such a construction allows the factfinder to consider all of the circumstances involved in obtaining and consuming the substance. 
 ¶22 Contrast this with a case where someone takes and eats a brownie at a potluck with friends, but it turns out to be a pot brownie that causes their intoxication. If we define the substance as the pot brownie, this hypothetical defendant would still have the involuntary intoxication defense available to them. While the defendant "knowingly introduced" the pot brownie, the fact that they 
 
15

 consumed a dessert from a known friend at a reputable event indicates that they likely had no reason to know that it was intoxicating under the "ought to know" prong. Clearly then, this construction of the substance allows courts to consider a defendant's reasonableness under the "ought to know" prong of section 18-1-804(5). 
 ¶23 The recently decided case of People v. Williams, 2025 COA 26, 568 P.3d 1267, demonstrates the foundational issue with the division's rule. There, Williams was arrested and charged after he was found walking through his neighborhood, shooting at people. Id. at ¶¶ 4-5, 568 P.3d at 1270. Williams testified that, even though he had been drinking, his behavior was caused by hallucinations due to the methamphetamine he mistakenly ingested. Id. at ¶¶ 3, 6, 568 P.3d at 1270. On appeal, Williams argued that he was entitled to present the involuntary intoxication defense under the division's holding in Mion: He knowingly ingested what he believed to be a particular intoxicant-cocaine-and instead unknowingly ingested a different intoxicant-methamphetamine. Id. at ¶ 13, 568 P.3d at 1271. Without addressing whether Mion was rightly decided, the court held that Williams could not raise the defense, reasoning that because he started hallucinating before he took drugs, there was insufficient evidence to suggest that his "mental disturbances were caused by involuntary intoxication (from suspected meth) rather than voluntary intoxication (from alcohol)." Id. at ¶ 19, 568 P.3d at 1272. 
 
16

 We agree with the People that "[i]t is highly unlikely that the legislature intended the intoxication statute to safeguard such a culpable defendant from criminal liability."[5] 
 ¶24 Accordingly, we hold that, when a defendant contends that there are multiple intoxicants in a product that he consumed, a substance per section 18-1-804(5) is the entire product, not each "particular intoxicant" within the product. Our interpretation contemplates a defendant's reasonableness under the "ought to know" prong of the statute and effectuates the legislature's intent. 
 ¶25 With this understanding of the term substance in mind, we now consider whether Mion was entitled to an involuntary intoxication defense. 
 E. Mion Was Voluntarily Intoxicated 
 ¶26 To raise the involuntary intoxication defense, Mion needed to present "some credible evidence" on that issue. § 18-1-407(1), C.R.S. (2025). In other words, he needed to provide "something more than an unsupported assertion" that his intoxication was not self-induced. Turner, 680 P.2d at 1293. We must review the 
 
17

 record as a whole to determine whether it contains "any evidence tending to establish" this defense. Garcia, 113 P.3d at 784 (quoting Idrogo v. People, 818 P.2d 752, 754 (Colo. 1991)). We conclude that Mion does not succeed under this standard. 
 ¶27 Mion acknowledged that the joint caused his intoxication. And Mion did not provide "some credible evidence" either that he did not "knowingly introduce[]" the joint or that he did not "know[] or ought to know" that the joint would have an intoxicating effect. First, Mion knowingly smoked the joint he was offered when he took "two hits" from it. Second, Mion knew or should have known that the joint would have an intoxicating effect. While Mion testified that he assumed the joint contained only marijuana, this was unreasonable. Significantly, Mion did not obtain the joint from a licensed establishment; to the contrary, it was a street drug that he accepted from someone whose name he did not even know. Moreover, he took it and smoked it without even asking what it was. Hence, we conclude that Mion ought to have known that the substance he consumed was intoxicating. 
 ¶28 In making his arguments, Mion likens his claim to someone who knowingly drinks alcohol, but also unknowingly ingests a different drug that causes more severe intoxication. He therefore contends that defining the substance as the 
 
18

 whole product would prohibit victims of a spiked drink from raising the involuntary intoxication defense. We are not persuaded. 
 ¶29 This hypothetical defendant would have access to the involuntary intoxication defense under language in section 18-1-804(5) that creates an exception to the "[s]elf-induced intoxication" definition. Per the statute, even if a defendant knowingly introduced a substance and ought to have known that the substance was intoxicating, their intoxication is not self-induced if the substance was "introduced pursuant to medical advice or under circumstances that would afford a defense to a charge of crime." § 18-1-804(5) (emphasis added). 
 ¶30 While the language "under circumstances that would afford a defense to a charge of crime" may be ambiguous, it serves a purpose. See Harvey v. Cath. Health Initiatives, 2021 CO 65, ¶ 33, 495 P.3d 935, 942 ("We, however, are not at liberty to alter the wording of a statute. Nor may we interpret statutory language so as to render any of that language superfluous."). Unlike Mion, when a person purchases an alcoholic drink from a licensed facility that is then secretly spiked, they have no reason to know that their drink was altered. Those circumstances would "afford a defense to a charge of crime" because these facts significantly negate the defendant's intent to voluntarily intoxicate oneself. 
 ¶31 The language of the "[s]elf-induced intoxication" definition in our presentday involuntary intoxication statute originally stems from, and is nearly identical 
 
19

 to, section 2.08(5)(b) of the 1962 Model Penal Code.[6] Model Penal Code and Commentaries § 2.08 (A.L.I., Official Draft &Revised Comments 1962). A notation about the history of section 2.08 directs us to Tentative Draft No. 9 for the "original detailed commentary." Id. This commentary states: "Of course, intoxication caused by the fraud of another is not self-induced." Model Penal Code § 2.08 cmt. 6 (A.L.I., Tentative Draft No. 9 1959). 
 ¶32 In the spiked-drink situation, the circumstances foreseeably consist of fraud or trickery. A hypothetical bar-goer asks for a drink with specific alcohol, a "bourbon" or a "rum and coke," but ends up consuming something different once the drink is spiked by another. But here, Mion presented no evidence that the "something unknown" was introduced through trickery or other such circumstance. He was simply handed an unspecified joint which he decided to smoke. 
 ¶33 Accordingly, we conclude that Mion did not present sufficient evidence to entitle him to raise the affirmative defense of involuntary intoxication. 
 
20

 III. Conclusion 
 ¶34 For the foregoing reasons, we reverse the judgment of the court of appeals and remand the case for further proceedings consistent with this opinion. 
 HOOD, JUSTICE dissented. 
 
21

 MARQUEZ, CHIEF JUSTICE dissenting. 
 ¶35 The majority interprets section 18-1-804, C.R.S. (2025), to render the involuntary intoxication defense unavailable as a matter of law to individuals in Isaac U. Mion's situation-that is, a person who knowingly ingests one intoxicant, but who asserts that in so doing, he unknowingly ingested a second, different intoxicant that caused him to be unable to conform his conduct to the law. 
 ¶36 In reaching this conclusion, the majority defines "substance" as the entire consumable "product," rather than the intoxicant-that is, the specific chemical or material that causes intoxication. Maj. op. ¶ 24. But this approach defies the plain language of section 18-1-804 and, as pointed out by the court of appeals, exposes otherwise innocent people to criminal liability. People v. Mion, 2023 COA 110M, ¶ 37, 544 P.3d 111, 117. For these reasons, and because I also conclude that Mion presented sufficient evidence to warrant a jury instruction on involuntary intoxication, I respectfully dissent. 
 I. For Purposes of the Involuntary Intoxication Defense in Section 18-1-804, the Term "Substance" Logically Refers to the Intoxicant that Caused a Person to Be Incapable of Conforming Their Conduct to the Law 
 ¶37 When interpreting a statute, we begin with its plain language and read the statute "as a whole" to give "consistent, harmonious, and sensible effect to all of its parts," i.e., we "read statutory words and phrases in context." McCoy v. People, 2019 CO 44, ¶¶ 37-38, 442 P.3d 379, 389. 
 
22

 ¶38 The crux of the involuntary intoxication defense appears in section 18-1-804(3), which provides that "[a] person is not criminally responsible for his conduct if, by reason of intoxication that is not self-induced at the time he acts, he lacks capacity to conform his conduct to the requirements of the law." (Emphasis added.) Notably, this provision defines involuntary intoxication by what it is not: "self-induced" intoxication. 
 ¶39 The statute goes on to define "[s]elf-induced intoxication" as intoxication caused by substances which the defendant (1) "knows or ought to know have the tendency to cause intoxication" and (2) "knowingly introduced or allowed to be introduced into his body." § 18-1-804(5) (emphases added). Logically then, "intoxication that is not self-induced" under section 18-1-804(3) means intoxication that does not meet one or both prongs of the definition of "[s]elf-induced intoxication"; that is, intoxication caused by a substance that the defendant (1) did not "know[] or ought to know" had the tendency to cause intoxication, or (2) did not "knowingly introduce[]" into his body. 
 ¶40 I agree with Justice Hood that section 18-1-804 focuses on the intoxicant that caused the defendant's intoxication, not the "entire product" the defendant consumed. See Dis. op. ¶ 55 (Hood, J., dissenting). Subsection (4) of the statute defines "[i]ntoxication" as a "disturbance of mental or physical capacities resulting from the introduction of any substance into the body." § 18-1-804(4) (emphases 
 
23

 added). And subsection (5) refers directly to "substances which . . . cause intoxication." § 18-1-804(5) (emphasis added). These provisions show that the term "substance" refers to an intoxicant-a particular chemical material that when ingested causes a "disturbance of mental or physical capacities." § 18-1-804(4). Thus, for purposes of the involuntary intoxication defense in section 18-1-804, the term "substance" refers to the (unknowingly ingested) intoxicant that caused a person to be incapable of controlling their conduct. 
 ¶41 The majority instead reads "substance" in section 18-1-804 to mean the "entire product" the defendant consumes-i.e., the drink, the food, or the cigarette, rather than the specific intoxicant contained in the consumable product that causes a defendant to be unable to conform their conduct to the requirements of the law. See Maj. op. ¶ 24. As explained above, this broad reading of "substance" is not grounded in the statutory language, nor does it comport with common sense. To borrow the majority's pot brownie example, see id. at ¶ 21, it is not a person's ingestion of the flour, cocoa, or sugar in a brownie that causes intoxication; it is the marijuana (and specifically-as the majority acknowledges-the tetrahydrocannabinol ("THC")). 
 ¶42 The majority's approach not only defies the statutory language but also exposes otherwise innocent people to criminal liability by depriving juries of the ability to fully assess a defendant's culpability. An adult who responsibly 
 
24

 consumes a single cup of alcoholic punch or a cocktail at a party, unaware that the punch or cocktail is spiked with an illegal stimulant, may not claim involuntary intoxication even if the accidentally ingested stimulant is what causes the person to engage in unlawful behavior. The same is true for the adult who lawfully consumes legal recreational marijuana (say by eating a brownie or smoking a joint) unaware that the "product" is laced with an additional, potent hallucinogen that renders them incapable of controlling their behavior. Under the majority's view, such individuals are prohibited from arguing to a jury that they did not knowingly ingest the additional intoxicant that resulted in their unlawful behavior. Instead, under the majority's reasoning, the person's intoxication must be deemed selfinduced because they knowingly ingested the intoxicating "product": the drink, the food, or the cigarette.[1] 
 
25

 ¶43 Put differently, under the majority's approach, a person who reasonably ingests a legal intoxicant unaware that it contains a second intoxicant that causes their unlawful behavior is barred from raising the involuntary intoxication defense. Because I believe such individuals should be allowed to argue to a jury that they are not culpable for their crimes and that holding otherwise is both illogical and contrary to the statute's language, I cannot subscribe to the majority's interpretation. 
 ¶44 The majority justifies its holding out of fear that the division's approach would allow a flood of frivolous involuntary intoxication defenses. But such fears are overblown. A defendant (such as Mion) who acknowledges that they consumed one intoxicant, but asserts that they unknowingly ingested a different intoxicant, will have to present "some credible evidence" that it was the additional intoxicant that led to their uncontrollable behavior to warrant a jury instruction on involuntary intoxication.[2] § 18-1-407(1), C.R.S. (2025). This burden is precisely why the division in People v. Williams, 2025 COA 26, 568 P.3d 1267, concluded that the defense was unavailable in that case. There, the defendant "attempted to raise 
 
26

 an involuntary intoxication defense, asserting that he had intended to use cocaine but involuntarily consumed a different drug, which he believed was meth[amphetamine]." Id. at ¶ 6, 568 P.3d at 1270. The evidence in that case, however, suggested that the defendant was already experiencing the intoxicating effects of alcohol before consuming the suspected methamphetamine, indicating that his unlawful behavior was the result of intoxication from his voluntary consumption of alcohol, not the allegedly involuntary consumption of a different drug. Id. at ¶¶ 16-17, 568 P.3d at 1272. 
 ¶45 In sum, because the majority's interpretation is contrary to the statute's language and will prohibit otherwise innocent people from raising the defense, I cannot subscribe to the majority's interpretation. 
 II. Mion Raised Sufficient Evidence to Require the Trial Court to Submit His Involuntary Intoxication Defense to the Jury 
 ¶46 Because I would hold that Mion's proffered involuntary intoxication defense is legally cognizable, I would also consider the factual question of whether Mion presented sufficient evidence to warrant an involuntary intoxication instruction. I conclude that he did. 
 ¶47 A defendant is entitled to a jury instruction on an affirmative defense if they present "some credible evidence" supporting that defense. § 18-1-407(1). Mion satisfied that burden here. 
 
27

 ¶48 Mion testified that he assumed the joint offered to him contained only marijuana and that he perceived nothing unusual about the joint's smell or taste. He explained that he had smoked marijuana on hundreds of occasions and understood how it would affect him. In accordance with those expectations, he believed that he would be able to complete the tasks he had planned for the day after smoking the joint and testified that if he believed smoking the joint would have interfered with his plans, he would not have smoked it. The effects he ultimately experienced, however, were unlike any effects he had previously felt after smoking marijuana. 
 ¶49 Testimony from one of the responding officers also suggests that the effects Mion experienced were different from those experienced after smoking marijuana. A police officer testified that he did not think someone smoking a joint would be able to tell the difference between marijuana and spice, and that spice can have different effects than marijuana; spice acts as a stimulant. Importantly, the officer testified that he believed Mion was under the influence of a stimulant, making him "highly animated," "[a]gitated," and less compliant in response to pain. And Mion's behavior was confirmed by surveillance footage of his offenses and arrest. 
 ¶50 I agree with the court of appeals division that, taken together and viewed in the light most favorable to Mion, this evidence was sufficient to warrant a jury instruction on involuntary intoxication. Mion, ¶¶ 45-50, 544 P.3d at 118-19. 
 
28

 ¶51 A trial court's failure to give an affirmative defense instruction despite "'some credible evidence'" supporting the defense "impermissibly lower[s]" the prosecution's burden of proof, "implicating a defendant's constitutional rights." Pearson v. People, 2022 CO 4, ¶ 16, 502 P.3d 1003, 1007 (quoting § 18-1-407(1)). Accordingly, the trial court's error here is subject to constitutional harmless error review. Id. The People do not argue that any error was harmless, let alone harmless beyond a reasonable doubt. Moreover, the jury's assessment of the evidence and of Mion's credibility could have led it to reasonably conclude that the People did not disprove the defense of involuntary intoxication beyond a reasonable doubt. Mion, ¶ 55, 544 P.3d at 120. Accordingly, the trial court's failure to instruct the jury on involuntary intoxication constitutes reversible error and requires a new trial. 
 III. Conclusion 
 ¶52 The language of the involuntary intoxication defense in section 18-1-804 focuses on the "substance" that caused a person to lose control of their conduct. "Substance" therefore logically refers to the (unknowingly ingested) intoxicant, not the "entire product" consumed. The majority's interpretation of the statute is contrary to its plain language and, as the division below pointed out, means that "anytime a person knowingly ingests an intoxicant-no matter how mild-the person will be criminally responsible for any resulting behavior, even if what was 
 
29

 ingested contained, unbeknownst to the defendant, a different intoxicant-no matter how potent and mind-altering." Mion, ¶ 37, 544 P.3d at 117. Because I cannot agree with the majority's interpretation of the statute, and because I believe that under a proper interpretation, Mion produced sufficient evidence to warrant a jury instruction on involuntary intoxication, I respectfully dissent. 
 
30

 HOOD, JUSTICE dissenting. 
 ¶53 I also respectfully dissent. 
 ¶54 In doing so, however, I acknowledge that the majority's opinion sets forth a plausible reading of the plain language of an ambiguous statute. Moreover, it has the virtue of reducing the potential for all-too-convenient claims of involuntary intoxication after a defendant chooses to consume unpredictable street drugs and puts others in harm's way. In the modern world, the unknown potency of such drugs is a foreseeable risk. See, e.g., Dangerous Synthetic Drugs: Hearing Before the S. Caucus on Int'l Narcotics Control, 113th Cong. 8 (2013) https:// www.drugcaucus.senate.gov/wp-content/uploads/2022/11/ Rannazzisi_Dangerous-Synthetic-Drugs-Testimony-SDC-25Sept13.pdf [https://perma.cc/ EW66-LQ5B] (statement of Joseph T. Rannazzisi, Deputy Assistant Adm'r, Off. of Diversion Control, Drug Enf't Admin., about the increased prevalence of anxiety attacks, hallucinations, and paranoid behavior caused by synthetic cannabinoids). Because section 18-1-804, C.R.S. (2025) is ambiguous, we are permitted to consider the consequences of our interpretation. § 2-4-203(1)(e), C.R.S. (2025). All to say that from a policy perspective, I get it. 
 ¶55 Even so, the central question here is really dictated by the plain language: What substance "caused" the conduct that deprived the defendant of the ability to conform his conduct to the requirements of the law? § 18-1-804(4)-(5); 
 
31

 People v. Mion, 2023 COA 110M, ¶ 31, 544 P.3d 111, 116. Sifting through evidence of the defendant's knowledge of what he ingested and how it affected his behavior is a quintessential question of fact. Assuming some credible evidence of innocent mistake, the defendant should be able to put that question before a jury, which can be trusted to fairly evaluate credibility. 
 ¶56 For the reasons outlined by Chief Justice Marquez, Dis. op. ¶ 48 (Marquez, C.J., dissenting), and the division below, Mion, ¶ 45, 544 P.3d at 118, Mion presented the "small quantum" of evidence necessary to require the trial court to instruct the jury on the defense of involuntary intoxication. Id. at ¶ 43, 544 P.3d at 118 (quoting Galvan v. People, 2020 CO 82, ¶ 24, 476 P.3d 746, 754). 
 ¶57 The Chief also demonstrates how the majority's interpretation yields illogical and unfair results. Dis. op. ¶ 42 (Marquez, C.J., dissenting). The majority waves off the "spiked-drink" problem by observing that Mion (1) didn't obtain the marijuana from a licensed establishment, (2) understood he was ingesting a street drug obtained from someone whose name he didn't even know, and (3) smoked it without asking what it was. Maj. op. ¶ 27. In its view, "Mion ought to have known that the substance he consumed was intoxicating," so he can't seek refuge in the involuntary intoxication statute. Id. 
 ¶58 But if the question is simply whether a defendant ought to have known that any substance he consumed was at all intoxicating, I see no principled way to allow 
 
32

 the victim of a spiked drink to access the involuntary intoxication defense without also sweeping in Mion. After all, the hypothetical person who consumes what turns out to be a spiked drink wouldn't necessarily know who made the drink or what they or others secretly put in it, at a respectable licensed establishment or at a house party with red Solo cups ripe for mischief. 
 ¶59 And I'm also not convinced by the majority's attempt to distinguish between Mion and the hypothetical victim of a spiked drink through the Model Penal Code's reference to a possible fraud exception. Maj. op. ¶ 31. The majority itself notes that because Colorado has codified the involuntary intoxication defense, the common law is only persuasive. Id. at ¶ 14 n.4. And standing alone as persuasive authority, the commentary to a tentative draft of model legislation written in 1959 is thin gruel. 
 ¶60 Nor do I understand what statutory "defense" the majority believes that hypothetical victim would plead to access the "introduced pursuant to . . . circumstances that would afford a defense" exception under section 18-1-804(5). Maj. op. ¶ 29. Duress? In both cases (Mion's and the hypothetical victim's), the defendants would be stretching the language of "the use or threatened use of unlawful force upon him" to plead duress. § 18-1-708, C.R.S. (2025). And there is no statutory language in section 18-1-804(5) that would immunize the victim of a 
 
33

 crime like assault unless they could also independently plead an affirmative defense. 
 ¶61 Finally, although I share the majority's concern about opening the floodgates to specious involuntary intoxication defenses, I take some comfort in age-old tests of veracity. To justify instruction, a claim of innocent mistake must be credible. Galvan, ¶ 24, 476 P.3d at 754 ("[T]he defendant, to raise the issue, shall present some credible evidence on that issue." (quoting § 18-1-407(1), C.R.S. (2025))). The circumstances of Mion's case-in which he testified on his own behalf and police officers at least indirectly corroborated some of his testimony-were unusual. Other defendants hoping for a similar safe harbor would struggle to make the requisite threshold showing, and trial judges would continue to be discerning in deciding whether they have done so. And even defendants who manage to clear that admittedly low hurdle would still need to survive a jury's scrutiny. 
 ¶62 Because I think the division got this right, I respectfully dissent. 
 --------- 
 Notes: 
 [1] For our purposes here, "self-induced" intoxication and "voluntary" intoxication mean the same thing. 
 [2] We granted certiorari to review the following issue: 
 
 1. Whether the court of appeals erred in adopting a
 rule that does not require defendants to provide some
 evidence of innocent mistake when invoking the affirmative
 defense of involuntary intoxication.
 
 [3] We do not determine whether a defendant must show evidence of "innocent mistake" to raise the affirmative defense of involuntary intoxication as this is a standard that stems from a common law version of involuntary intoxication. See, e.g., City of Minneapolis v. Altimus, 238 N.W.2d 851, 856 (Minn. 1976). The People themselves point out that "[c]ourts are without the authority to extend defenses that are created and limited by statute." Determining whether defendants must show "innocent mistake" to raise the involuntary intoxication defense would do just that. 
 [4] The parties' arguments concerning blameworthiness rely on common law principles of involuntary intoxication. See, e.g., Altimus, 238 N.W.2d at 856. However, because involuntary intoxication is codified in Colorado, and "[s]elf-induced intoxication" is specifically defined, we adhere to the levels of responsibility or blameworthiness envisioned by section 18-1-804(5), through the language of "knowingly" and "ought to know." 
 [5] There is little legislative history. It consists of legislative commentary when the General Assembly enacted section 18-1-804's nearly identical predecessor in 1971, noting that the statute was based on a proposed Michigan law. § 40-1-904 cmt., 3 C.R.S. (1963 & Supp. 1971). In turn, the commentary in that proposed Michigan law does not give direct insight into the Michigan legislature's intent regarding the definition of the term "substances," but only states that "[t]he emphasis is on the result the substance produces, not its classification." Mich. Revised Crim. Code § 715(6) cmt. (Mich. State Bar, Special Comm. & Comm. on Crim. Juris., Final Draft Sept. 1967). 
 [6] Our present-day involuntary intoxication statute was based on a proposed Michigan law which, in turn, was "based primarily on Model Penal Code [section] 2.08." Mich. Revised Crim. Code § 715(6) cmt. (Mich. State Bar, Special Comm. & Comm. on Crim. Juris., Final Draft Sept. 1967); § 40-1-904 cmt., 3 C.R.S. (1963 & Supp. 1971). 
 [1] The majority argues that defining "substance" to refer to the "particular intoxicant" would allow a defendant to raise an involutory intoxication defense simply by claiming that they unknowingly ingested an unknown intoxicant. Maj. op. ¶ 20. I respectfully disagree; the unknowing ingestion of an intoxicant is the whole point of the involuntary intoxication defense. The majority also suggests that bar patrons whose drinks are spiked by way of trickery or fraud could still raise the defense because the definition of self-induced intoxication under section 18-1-804(5) has an exception for substances introduced "under circumstances that would afford a defense to a charge of crime." Maj. op. ¶ 29. But it is unclear how such a defendant could claim involuntary intoxication if, under the majority's broad definition of "substance," the person was not "tricked" into ingesting the product - i.e., the drink or food - as opposed to the intoxicant. The majority cannot have it both ways. 
 [2] In addition to being required to present some credible evidence that it was the additional intoxicant that led to the unlawful behavior, the defendant's evidence must indicate that they did not knowingly ingest the additional intoxicant. The prosecution can disprove such a defense by establishing that the intoxication was in fact self-induced (because under the circumstances, the defendant knew or ought to have known they were ingesting an additional intoxicant). 
 ---------