24CA0674 Peo v Shea 03-05-2026

COLORADO COURT OF APPEALS

_____

Court of Appeals No. 24CA0674
Boulder County District Court No. 18CR272
Honorable Patrick Butler, Judge

_____

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Daniel Richard Shea,

Defendant-Appellant.

_____

ORDER AFFIRMED

Division VII
Opinion by JUDGE PAWAR
Johnson and Gomez, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced March 5, 2026

_____

Philip J. Weiser, Attorney General, Majid Yazdi, Senior Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Phoebe W. Dee, Alternate Defense Counsel, Basalt, Colorado, for Defendant-
Appellant

¶ 1     Defendant, Daniel Richard Shea, appeals the postconviction court's order summarily denying his Crim. P. 35(c) motion, in which he claimed that he received ineffective assistance of counsel related to his sentencing.  We affirm.

## I.     Background

¶ 2     According to the presentence investigation report (PSIR) detailing the circumstances of the offenses, Shea believed he had been financially harmed by a consulting company in Colorado that he hired to build a website for a business he was trying to launch. He concocted a plan to extort money from the consulting company's two co-owners.  He paid an accomplice to help him with the plan, telling the accomplice that he needed help "pull[ing] off a prank on some of his friends."

¶ 3     Shea and his accomplice traveled from Oregon to Colorado, went to the company's office, and handcuffed the two co-owners, after which the accomplice left the scene.  Shea then assaulted both victims, threatened them by holding a gun to their heads and a knife to their throats, and demanded $50,000 from them.

¶ 4     The prosecution charged Shea with, among other offenses, first degree burglary; two counts each of second degree kidnapping,

criminal extortion, attempted aggravated robbery, and menacing; and seven crime of violence counts.

¶ 5 The parties ultimately reached a plea agreement. In exchange for the dismissal of the remaining counts, Shea pled guilty to one count each of first degree burglary, second degree kidnapping, and criminal extortion, along with the three corresponding crime of violence counts. The parties stipulated to an aggregate sentence in the range of twenty-five to forty years in the custody of the Department of Corrections (DOC).

¶ 6 The PSIR detailed, among other things, the circumstances of the offenses, Shea's admissions during a police interrogation, and Shea's background, including his history of concussions, mental health issues, and substance abuse.

¶ 7 Before sentencing, Shea's counsel filed a Motion in Anticipation of Sentencing (presentence motion). In it, counsel requested and argued for an aggregate sentence of twenty-five years in the DOC, the bottom of the stipulated range. The court also received numerous letters and references supporting Shea from his family and friends.

¶ 8    At sentencing, the prosecutor requested an aggregate sentence of forty years in the DOC, while Shea's counsel again requested a sentence of twenty-five years in the DOC. After hearing both counsel's arguments in support of those requests, as well as Shea's allocution, the district court imposed an aggregate sentence of thirty-five years in the custody of the DOC.

¶ 9    Soon after sentencing, Shea filed a pro se Crim. P. 35(b) motion to reconsider his sentence. In it, he attributed his commission of the offenses to his traumatic brain injury caused by his long history of concussions, as well as his insomnia and depression. He faulted his counsel for not advancing those arguments in support of a more lenient sentence. He also claimed that his accomplice played a major role in carrying out the crimes, and he faulted the prosecutor for characterizing the accomplice as a victim of Shea's plan.

¶ 10    After the prosecution filed a response, the same district judge who had presided over sentencing issued a written order denying Shea's request for reconsideration of his sentence.

¶ 11    Shea later filed a pro se Crim. P. 35(c) motion, subsequently supplemented by post-conviction counsel, raising ineffective

assistance of counsel claims.  In his motion, Shea alleged his sentencing counsel provided ineffective assistance "in preparing for[] and presenting mitigation at his sentencing hearing with the direct result being that he received a longer than called for sentence."  Specifically, Shea alleged counsel failed to present mitigation evidence that Shea was "in a mental fog" in the months leading up to the offenses and during the offenses as a result of his substance abuse, traumatic brain injury, anxiety, and insomnia.  And he again faulted the prosecutor for characterizing the accomplice as a victim of his plan to commit the offenses.

¶ 12    After the prosecution filed a response, the postconviction court issued a written order denying the motion without a hearing.  Shea now challenges that summary denial.

## II.    Applicable Law and Standard of Review

¶ 13    A defendant raising a claim of ineffective assistance of counsel must show that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense.  *Strickland v. Washington,* 466 U.S. 668, 687 (1984).  For the performance prong, the defendant must show that counsel's representation fell below an objective standard of reasonableness.  *Id.* at 687-88.  For the

prejudice prong, the defendant must show a "reasonable probability" that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.*

¶ 14 A postconviction court may deny a Crim. P. 35(c) motion without holding an evidentiary hearing "only where the motion, files, and record in the case clearly establish that the allegations presented in the defendant's motion are without merit and do not warrant postconviction relief." *Ardolino v. People*, 69 P.3d 73, 77 (Colo. 2003). That standard is satisfied if (1) the defendant's allegations are bare and conclusory; (2) the allegations, even if true, do not warrant postconviction relief; or (3) the record directly refutes the defendant's claims. *People v. Duran*, 2015 COA 141, ¶ 9.

¶ 15 We review de novo a postconviction court's ruling denying a Crim. P. 35(c) motion without an evidentiary hearing. *People v. Cali*, 2020 CO 20, ¶ 14.

### III. Analysis

¶ 16    As we understand it, Shea challenges the summary denial of three ineffective assistance claims. First, he asserts a broad claim that counsel was ineffective by effectively conceding the absence of mitigating circumstances and echoing the prosecution's assessment of Shea's culpability. Second, he asserts a more specific claim that counsel was ineffective for mischaracterizing his state of mind at the time of the offense. And third, he argues counsel should have more effectively countered the prosecution's argument that Shea victimized his codefendant and manipulated him into participating in the crimes. We conclude that summary denial of all three claims was appropriate because the record either refutes their factual allegations or establishes that Shea could not prove at least one prong of *Strickland*.

### A. Broad Mitigation Claim

¶ 17    In this claim, Shea alleged that his counsel at sentencing "expressly disavowed" mitigating factors, "told the court that . . . mitigating circumstances did not exist," "and, essentially, echoed the People's assessment of [his] culpability."

6

¶ 18     Those assertions are refuted by the record.  *See Duran*, ¶ 9.  At sentencing, Shea's counsel emphasized mitigating factors *at length* during her argument.  For example, counsel discussed Shea's substance abuse, saying that Shea "had always used some substances . . . .  And I don't think that made him do this, but it certainly fueled his impulsivity . . . .  I think it is fair and accurate to say that he was addicted."  Counsel then turned to Shea's mental health, saying, "Mr. Shea has suffered from depression the entirety of his life . . . .  And he also suffered from insomnia . . . .  I think he wasn't figuring out how to deal with those."  After laying that groundwork, counsel asserted that "in the five to six weeks leading up" to the offenses, "he sort of spiraled and ruminated" before executing his plan to commit the offenses.  Counsel then proceeded to emphasize that (1) Shea has no criminal history; (2) his way of life before the offenses, as reflected in the letters and references from family and friends, shows that the offenses were an "anomaly"; (3) his behavior in jail has been impeccable; and (4) he plans to use his time in the DOC to get mental health and substance abuse treatment and to utilize his nursing background in the DOC's hospice or medical unit.  Counsel also presented some of those

arguments in the presentence motion. After presenting all that mitigation, counsel repeated her request for the minimum stipulated sentence of twenty-five years, which notably was in stark contrast to the prosecution's request for the maximum stipulated sentence of forty years.

## B.    Specific Mitigation Claim

¶ 19    Shea's specific mitigation claim is premised on the factual assertion that he "was under the influence of drugs at the time of the offense." Working from that premise, he contends that his counsel was ineffective in saying at sentencing, "[W]e aren't saying that he was high and he did this impulsively." In Shea's view, his counsel essentially told the court that he "committed this crime stone sober," attributing his motive to his "hyper-masculine" nature and desire to avoid being perceived as a failure.

¶ 20    We conclude that this argument mischaracterizes Shea's counsel's argument at sentencing, read holistically. Shea's counsel made these statements in the context of highlighting that Shea had accepted responsibility for his offenses, as reflected by his own confessions during the police interrogation. Promoting acceptance of responsibility is one of the statutorily enumerated purposes of

sentencing. *See* § 18-1-102.5(1)(f), C.R.S. 2025. And Shea's counsel made those statements in response to the prosecutor's argument that Shea had *not* accepted responsibility for his actions, which the prosecutor based on Shea's statements in the PSIR emphasizing his drug addiction, his history of concussions, his mental health issues, and that the months leading up to the offenses were a "blur."

¶ 21   Even before sentencing, Shea's counsel stated in the presentence motion that

> Mr. Shea does not seek to excuse or justify his actions in anyway. He repeatedly asserted that he was not excusing his actions in the PSI *and reiterated to counsel* that his intent in providing information about his mental health, head trauma, and drug abuse was not intended to excuse or mitigate his actions in this case.

(Emphasis added.) And in Shea's own pro se Crim. P. 35(b) motion, he wrote, "I confessed upon [my] arrest . . . . I see no way to express remorse without taking ownership of my actions. Accountability is part of my character." Thus, the record indicates that Shea's counsel was merely fulfilling her client's wishes in arguing that, despite Shea's substance abuse, history of

9

concussions, and mental health issues, he had reflected on his actions and was accepting responsibility for them. And as we have already explained, Shea's counsel then proceeded to argue mitigating factors at length at sentencing, including regarding Shea's substance abuse, in requesting the minimum possible aggregate sentence of twenty-five years in the DOC.

¶ 22 Further, as emphasized by the prosecution at sentencing, any argument that Shea committed this crime spontaneously under the influence of drugs would have been weak considering the evidence that Shea had planned the offenses in the weeks or months leading up to them.

¶ 23 On this record, we conclude Shea was not entitled to an evidentiary hearing to prove counsel's allegedly deficient performance in failing to present mitigation on his behalf.

### C. Countering the Prosecutor's Characterization of the Accomplice as a Victim of Shea's Plan

¶ 24 Shea also claims that his counsel was ineffective by not countering the prosecutor's argument at sentencing that Shea had victimized his codefendant by manipulating him to participate in the crimes. Shea does not explain *how* his counsel could or should

have effectively countered that argument. Instead, he asserts generally that his counsel should have "lodge[d] an[] objection" to the prosecutor's argument, and that "[t]here is no possible strategic reason to have allowed th[e] argument to go unanswered." Nevertheless, we will construe Shea's claim as implying that it was improper for the prosecutor to describe a culpable (charged and convicted) codefendant as one of Shea's victims.

¶ 25    We conclude that the record in the case clearly establishes that Shea's claim is without merit because it shows that the counterargument would have had little to no impact. *Ardolino*, 69 P.3d at 77. The prosecutor at sentencing specifically conceded that the codefendant had been sentenced to probation for his role in the crimes. The prosecutor continued, however, to argue that Shea was much more culpable for concocting the plan to commit the crimes and manipulating the codefendant to participate in them. The prosecutor also highlighted Shea's own admissions during a police interrogation — which were documented in the PSIR — that Shea effectively tricked the codefendant into participating in the plan by telling the codefendant that he needed help pulling off a "prank" on his friends.

11

¶ 26    The prosecutor's argument at sentencing that Shea had victimized the codefendant was forthcoming, appropriately nuanced, and supported by the record before the district court. Therefore, any attempt by counsel to challenge that characterization would have been feeble, and we conclude there is no reasonable probability that raising it would have resulted in a different sentence. Indeed, in its order denying the Crim. P. 35(b) motion, the district court effectively ruled that neither this argument nor the unmade mitigation argument discussed above would have made a difference in the sentence it imposed.

¶ 27    Because the record established that Shea could not prove prejudice, Shea was not entitled to an evidentiary hearing on this claim.

IV.    Abandoned Claims

¶ 28    As to any other claims raised in Shea's Crim. P. 35(c) motion, he has not reasserted those claims on appeal. We therefore deem them abandoned. *See People v. Osorio,* 170 P.3d 796, 801 (Colo. App. 2007).

V.    Disposition

¶ 29    The order is affirmed.

JUDGE JOHNSON and JUDGE GOMEZ concur.